FILED
2026 Nov-23 PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## We're a Gold Stevie Award Winner for 2017, 2018, 2019 & 2020!

And also have won company of the year awards
4 years in a row!

### Begin your career with USHEALTH Advisors

Learn More

## Living a Mission of HOPE

### Donations of Time, Talent and Treasure help Families in Local Communities

Helping Other People Everyday (HOPE) is more than a clever acronym for the staff, management and independently contracted Agents of USHEALTH Advisors, LLC (USHA). For them, it is a mission that is lived on a daily basis; an organizational commitment to make a positive difference in the lives of others.

Learn More

## News and Insights

See More




Tuesday, January, 11, 2022

### What you Should Know about Cataracts Surgery

Read More




Tuesday, January, 11, 2022

### Are Your Wisdom Teeth Coming in Correctly?

Read More




Tuesday, January, 11, 2022

### What Causes Brown Spots in Eyes?

Read More

By signing up, you are agreeing to our Privacy Policy and Terms of Use. You can unsubscribe at any time.

## Let us help you customize your health coverage today.

Get Started

- About Us
- PPO Networks
- Contact Home Office
- Privacy Policy
- Health Data Privacy Policy
- Blog
- Member Services
- HOPE
- Terms of Use

**Legal Notice :** All products are underwritten and issued by Freedom Life Insurance Company of America, National Foundation Life Insurance Company and Enterprise Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. All products not available in all states. Contact a Licensed Insurance Agent for additional information.

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734
1-800-387-9027
info@ushealthgroup.com

7:00 AM - 7:00 PM CT Monday - Friday
8:00 AM - 1:00 PM CT Saturday

Media Inquiries :
media@ushealthgroup.com

Copyright 2026 © USHEALTH GROUP All rights reserved | Sitemap

FILED
2026 Nov-23 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

ROBIN BLACK, **CASE NO.:** 1:25-cv-01365-CLM

Plaintiff,

v.

USHEALTH ADVISORS, LLC, and
USHEALTH GROUP, INC.,

Defendants.
_______________________________________/

**DEFENDANT USHEALTH ADVISORS, LLC'S FIRST**
**SET OF INTERROGATORIES TO PLAINTIFF ROBIN BLACK**

Defendant USHEALTH Advisors, LLC ("USHA"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby propounds its First Set of Interrogatories to Plaintiff Robin Black, who shall serve answers to the Interrogatories in writing within thirty (30) days.

**DEFINITIONS**

1. "You," "Your," "Plaintiff" and "Black" mean Robin Black, the individual, and/or any persons or entities acting, or purporting to act, on her behalf.

2. "Lawsuit" or "Action" means the action filed in the United States District Court for the Northern District of Alabama, captioned *Black v. USHEALTH Advisors, LLC*, Case No. 1:25-cv-01365-CLM.

3. “Complaint” means the operative version of the Complaint filed by Plaintiff in the Lawsuit, presently Dkt. No. 1.

4. “Defendant” and “USHA” mean USHEALTH Advisors, LLC and anyone you contend was or is acting, or purporting to be acting, on its behalf.

5. The term “TCPA” shall mean and refer to the Telephone Consumer Protection Act, 47 U.S.C. § 227, and all regulations enacted pursuant thereto.

6. The term “ATA” shall mean and refer to the Alabama Telemarketing Act and all regulations enacted pursuant thereto.

7. The term “Text Message(s)” means all text messages (and, if alleged, any other form of solicitation) that you contend to have received from or on behalf of Defendant, including but not limited to those alleged in the Complaint.

8. The term “Telephone Call(s)” means all telephone calls (and, if alleged, any other form of solicitation) that you contend to have received from or on behalf of Defendant, including but not limited to those alleged in the Complaint.

9. The term “Subject Number” means the phone number (615) 519-8324.

10. “Person,” means any natural person or entity, including without limitation, any individual, firm, corporation, company, joint venture, trust, tenancy, association, partnership, business, agency, department, bureau, board, commission, or any other form of public, private or legal entity. Any reference herein to any

public or private company, partnership, association, or other entity include such entity's divisions, departments, subsidiaries, affiliates, predecessors, partners, present and former directors, officers, owners, shareholders, employees, attorneys, agents and all other persons acting or purporting to act on its behalf or subject to its direction or control.

11. "Document(s)" means all written or graphic material and all copies containing any additional matter, however produced or reproduced, of any kind and description in the actual or constructive possession, custody, care or control of the Defendants, which pertain directly or indirectly, in whole or in part, to the subjects or any other matters relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, originals (or full and correct copies) of correspondence, papers, email, letters, other communications (including Communications, defined below), notes, memoranda, photographs, schematics and other drawings, computer or telephone "screen shots," sound recordings (including telephone call recordings), telephone bills, telephone call logs, books, records, reports, studies, analyses, estimates, plans, advertising, contracts, agreements, acknowledgment and consent forms, invoices, ledgers, journals, schedules, bank checks, charge slips, receipts, calendars, diaries, recordings, data sheets and Electronic Records (as defined below) in any form.

12. “Electronic Records” and “ESI” mean a record created, generated, sent, communicated, received, or stored by means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic or similar capabilities, including but not limited to hard drive, server-based, cloud-based and/or Web-based documents and text on hard storage disks, external drives, jump-drives, CD-ROMs, DVD, optical discs, backup drives, printer buffers, smart cards, memory calculators, pagers, personal digital assistants, cellular telephones, computers and computer tablets, voice recording devices, answering machines, fax machine data and logs, and other data storage devices and/or compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. In response to this request, ESI should be produced in native format in a reasonable readable format, clearly labeled as to the kind of software used to prepare, organize, and manipulate the data contained.

13. “Communications” mean any oral or written statement, dialogue, colloquy, discussion, conversation, or other transfer of thoughts or ideas between persons and/or entities.

14. “Relating” or “related to,” “evidencing,” and “reflecting” mean directly or indirectly referring to, concerning, constituting, embodying, discussing, analyzing, reflecting, evidencing, mentioning, describing, pertaining to, arising out

of, in connection with, or in any way legally, logically, or factually connected with the matter discussed.

15. The conjunctions “and” and “or” mean “and/or” so as to encompass the broader of the two possible constructions, and shall not be interpreted disjunctively to exclude any information or documents otherwise within the scope of any Request.

16. The term “each” means “each and every” and the term “every” means “each and every.”

17. All pronouns used herein shall include and be read to encompass the alternative forms of the pronoun, whether masculine, feminine, neuter, singular or plural, and shall not be interpreted to exclude any information or documents otherwise within the scope of the particular Request.

## INSTRUCTIONS

1. These Interrogatories are continuing in nature and the responses must be supplemented by you at such time in the future as any facts, information and documents discovered hereafter shall have been ascertained, and such supplemental responses shall be served upon the undersigned attorneys reasonably after such discovery. The original of the responses are to be served on Defendant’s attorneys at the offices of Greenspoon Marder LLP, 200 East Broward Boulevard, Suite 1800, Fort Lauderdale, Florida 33301.

2. “Identify” or “describe” means the following:

a. When used in connection with natural persons, “identify” or “describe” means to state the person’s full name, present business address and telephone number, present home address, and city of residence as well as the substance of the person’s knowledge, where such knowledge was obtained, whether such knowledge was discussed with You, when such discussions occurred, who participated in such discussions, and the substance of all discussions.

b. When used in connection with an entity, “identify” or “describe” means to state the entity’s full name, last known address(es) and telephone number(s), and organization form (*e.g.*, corporation, sole proprietorship, partnership, joint venture, etc.).

c. When used in connection with an act, “identify” or “describe” means to provide a description of the act, including the place, date, and time of its occurrence, and the persons and/or entities engaged in the act.

d. When used in connection with documents, “identify” or “describe” means to state the nature of the document (*e.g.*, memorandum, letter, notes, etc.), its author(s), its addressee(s) or recipient(s), its title or subject matter, and a date. If the document has already been produced, it can be identified by the Bates number given to it at the time of production. If the document has not been previously produced, then Westgate requests that it be produced, pursuant to Fed. R. Civ. P. 34, along with Plaintiff’s response to these Interrogatories.

e. When used in connection with an oral communication, “identify” or “describe” means to state the time, date, place, and means of the oral communication (*e.g.*, telephone, personal meeting, etc.), the identity of all persons participating in the oral communication, the identity of persons hearing the oral communication, and a detailed description of the oral communication.

3. If you assert that any information called for by these Interrogatories is protected against disclosure by the attorney's work product doctrine, attorney-client privilege, or other similar grounds, you shall provide the following information with respect to such information or document: (a) the author(s) or speaker, including their name and capacity or title; (b) type, subject matter and physical size/number of pages of the document or information; (c) the name and capacity of all addressees and recipients of the original or copies of a document or the information; (d) all persons to whom the information or document was distributed, shown or explained; (e) the date the information was first known or a withheld document was created and/or dated; (f) the source from which the information or document was derived; and (g) the nature of the privilege asserted or other basis upon which you contend that you are entitled to withhold the information or document.

4. If you object to any portion of an Interrogatory, provide all information responsive to the portion to which you do not object.

5. Unless otherwise instructed, the relevant time period for all interrogatories directed to Plaintiff is from August 19, 2021 through the date you finish responding to this Set of Interrogatories.

**INTERROGATORIES**

1. State the name, current residential addresses, current business address, and title for You and all persons You consulted and/or who provided information or assistance to You in responding to these Interrogatories.

2. Identify the total number of Text Messages and Telephone Calls You claim to have received from Defendant or a third party allegedly texting and/or calling on its behalf, and for each alleged text message and telephone call, state the date, approximate time, and the names (if any) of persons or entities identified by the sender and/or caller, Your physical location at the time of each text message and telephone call, and describe with specificity the content and subject matter of each text message and telephone call, including but not limited to any instances in which You requested to no longer be called or contacted.

3. Describe and identify any and all communications between You and Defendant, including the dates on which each such alleged communication took place.

4. Describe and quantify any injury, damages, or harm (economic or otherwise) that You claim to have suffered as a result of the alleged violation(s) by Defendant, if any, and identify with particularity any documents supporting such injury, damages, or harm.

5. Describe and identify all facts evidencing that Defendant's alleged conduct toward You was "knowing" and/or "willful" as alleged in the Complaint.

6. Identify the specific date when Plaintiff acquired the Subject Number and the steps Plaintiff took to register the Subject Number on the National Do-Not-Call List.

7. Identify and describe the following information relating to Your telephone service for all telephone numbers registered or assigned to You, anyone else in Your household, or for which You or they have been the customary user since January 2020, including but not limited to the Subject Number: the name of the subscriber, the name of the carrier(s) (e.g., AT&T, Verizon, etc.), the date(s) of service (for each carrier), whether the telephone number is associated with a residential line or some other type of phone (e.g., cellular telephone, business number, voice over Internet Protocol ("VoIP") number), and whether the carrier assesses a specific charge for incoming calls and/or text messages. If any of Your telephone numbers switched from being associated with one type of phone to another type of phone (e.g., cellular phone, residential line, or some other type of phone), identify when the switch occurred, identify the type of phones switched, and identify the phone numbers associated therewith.

8. Identify any business purposes for which You use or have ever used the Subject Number since You started using Your cell phone, including but not limited to any use in an advertisement, email, business card, business stationery or letterhead, commercial website, professional association, networking group or

website, social media post, business record, communications with co-workers or current or prospective clients, LinkedIn profile, or a government filing in connection with a business, and including but not limited to in connection with Robin Black Piano Studio.

9. Identify Your business(es), Your position, duties, and responsibilities at Your business(es), and the telephone number(s) You use in connection with Your business(es), including but not limited to Robin Black Piano Studio.

10. Identify all telephone numbers over the last four years that You regularly used for any business or nonpersonal purpose.

11. Have You ever been a plaintiff, defendant, or class representative in any other lawsuit since January 2021? If so, please provide the style of the case, the case caption, the case number, the jurisdiction, the nature of the dispute, and whether You were a plaintiff or defendant.

12. Identify all demands, claims, or lawsuits asserting violations of the Telephone Consumer Protection Act and/or Alabama Telemarketing Act that You have made, directly or indirectly through an attorney, including the date of the demand, claim, or lawsuit, the name of the party that was alleged to have violated the TCPA and/or ATA, and the case numbers and courts of any lawsuits since January 2021.

13. Identify for each year from 2021 through the present date, the amount of compensation, money, or income that You, Your counsel, any entities that You controlled, and any charitable organizations received from a violation of the TCPA and/or ATA that You claimed, itemizing for each category of recipients (*i.e.*, You, Your counsel, any entities that You controlled, and any charitable organizations).

14. Identify for the service account associated with the Subject Number any and all instances from 2021 through the present date: (a) any person or entity other than Plaintiff who made a payment on the account; (b) any person or entity who reimbursed Plaintiff for a payment on the account; and (c) any deduction given as a business expense for charges or fees incurred for the service account.

Dated: January 23, 2026

Respectfully submitted,

GREENSPOON MARDER LLP

/s/ *Roy Taub*

Jeffrey A. Backman (Fla. Bar No. 662501)
(*limited admission*)
Roy Taub (Fla. Bar No. 116263)
(*limited admission*)
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
jeffrey.backman@gmlaw.com
rene.vazquez@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS TULEY &

SAVARESE, P.C.

M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

*Attorneys for Defendants*
*USHEALTH Advisors, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 23, 2026, a true and correct copy of the foregoing was served via e-mail to:

Michael F. Braun (4167U50M)
5016 Centennial Blvd., Ste. 200
Nashville, TN 37209
(615) 378-8942
mfb@braun-law.com

L. Landis Sexton (5057N71L)
3116 Southview Avenue
Montgomery, AL 36106
(334) 303-9359
Landis7777@gmail.com

*Attorneys for Plaintiff*

*/s/ Roy Taub*
ROY TAUB

FILED
2026 Nov-23 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **ROBIN BLACK,**<br>**Plaintiff,**<br><br>**v.**<br><br>**USHEALTH ADVISORS, LLC, and USHEALTH GROUP, INC.**<br>**Defendants.** | **Case No. 1:25cv-01365-CLM** |

**PLAINTIFF ROBIN BLACK'S SUPPLEMENTAL RESPONSE TO DEFENDANT USHEALTH ADVISORS, LLC'S FIRST SET OF INTERROGATORIES**

1. Robin Black, Plaintiff – 1812 Alabama Avenue NW, Fort Payne, AL 35967

   Landis Sexton, Attorney – 3116 Southview Avenue, Montgomery, AL 36106

   Michael Braun, Attorney – 5016 Centennial Blvd, Ste. 200, Nashville TN 37209

2. At the time of the filing of the case, as stated in the Complaint paragraphs 13-16 I had received the 7 calls and 37 texts. Later, with the case ongoing, I continued to receive calls, and I have filed a separate case in Dekalb County, Alabama; about those ongoing calls from an agent not named as a defendant in this case.

Marketing Calls:

1. On August 21, 2023, at 3:02 PM CST, Plaintiff received a phone call from (813) 940-0286, during which the caller identified himself as Alex Acevedo, an agent.
2. On August 24, 2023, at 11:24 AM CST, Plaintiff received a missed call from (813) 940-0286.
3. On August 24, 2023, at 3:02 PM CST, Plaintiff received a missed call from spoofed number (619) 344-0076.
4. On August 24, 2023, at 3:03 PM CST, Plaintiff received a phone call from spoofed number (619) 344-0076. This call was recorded, during which Plaintiff notified Mr. Acevedo of her Do Not Call status. Mr. Acevedo immediately hung up following this notification.
5. On September 3, 2024, at 4:48 PM CST, Plaintiff received a recorded call from (615) 392-2027. The caller identified herself as Angela Provost, who subsequently provided her personal number (801) 390-5459 via text message. LinkedIn identifies Angela Provost as a “Licensed Health Insurance Advisor with USHEALTH Advisors.”

6. On September 5, 2024, at 12:31 PM CST, Plaintiff received a recorded phone call from (813) 942-2613 with an agent who identified himself as Chick Rosas.

7. On September 14, 2024, at 10:58 AM CST, Plaintiff received a recorded phone call from (308) 456-0087, during which the agent, Chick Rosas, provided his insurance license number.

Marketing Texts:

8. On August 19, 2023, at 11:09 AM CST, Plaintiff received four (4) text messages from the spoofed number (409) 217-6020. “Thorpe robin piano studio, I work with Brokers to set up Cost effective Healthcare rates….”.

9. On August 21, 2023, at 11:21 AM CST, Plaintiff received one (1) text message from the spoofed number (409) 217-6020.

10. On August 21, 2023, at 5:39 PM CST, Plaintiff received one (1) text message from (813) 940-0286. “Hey Robin its Alex! The higher end of the policies in the private side is coming out to being 470-$500 a month with no deductible under United healthcare’s PPO Network.”

11. On August 22, 2023, at 9:37 AM CST, Plaintiff received two (2) text messages from (813) 940-0286. During this interaction, a policy was also sent to her via email from Alex Acevedo (Alexyourhealthadvisor@gmail.com)

12. On September 25, 2023, at 11:11 AM CST, from (772) 265-1397, Plaintiff received the following text message: "Thorpe robin piano studio, This is a follow-up regarding health coverage quotes Discussed either via text or call…" Plaintiff received a total of five (5) text messages between September 25, 2023, and October 1, 2023 from this number.

13. On November 11, 2023, at 5:10 PM CST, from (775) 474-8808, Plaintiff received the following text message: "Thorpe We can see you have been extremely productive lately, This is another Monthly follow-up regrading Healthcare…" Plaintiff received a total of four (4) text messages from this number between November 11 and November 15, 2023.

14. On November 18, 2023, at 3:12 PM CST, from (409) 977-9008, Plaintiff received the following text message:

"Happy Saturday! Thorpe Do not want to bother you at all. Just here to help…" Plaintiff received a total of five (5) text messages from this number between November 18 and November 21, 2023.

15. On July 15, 2024, at 11:14 AM CST, from (804) 280-3964, Plaintiff received the following text message: "Hey there, we have new PPO health plans without a deductible up for enrollment. Would you like a quote? - Amanda" Between July 15 and July 19, 2024, Plaintiff received six (6) text messages from this number, culminating in a Google Calendar invite from an individual identifying himself as Adam.

16. On August 28, 2024, at 9:28 AM CST, from (308) 456-0087, Plaintiff received a text message stating: "Thorpe robin piano studio, we have new zero deductible PPO health plans up for enrollment. Would you like a quote? - Natalie"

17. On September 4, 2024, at 7:47 PM CST, Plaintiff received a text message from (308) 456-0087.

18. On September 5, 2024, at 7:45 AM CST, Plaintiff received a text message from (308) 456-0087, outside of legally permitted telemarketing contact hours.

19. On September 5, 2024, at 9:29 AM CST, from (308) 456-0087, Plaintiff received a text message stating: “Perfect! I have you on the schedule for 1:30pm. My senior advisor, Chick, will be reaching out to assist you further.”

20. On September 5, 2024, at 12:50 PM CST, Plaintiff received a text message from (813) 942-2613, which the agent, Chick Rosas identified as his personal cell phone. “Hey Robin this is Chick your Health Advisor we just spoke on the phone. Here is my direct number…”

21. On September 6, 2024, at 2:58 PM CST, Plaintiff received a text message from (308) 456-0087.

22. On September 14, 2024, at 11:06 AM CST, Plaintiff received a text message from (813) 942-2613, again identified as the agent’s personal cell phone.

23. On January 13, 2025, at 11:00 AM CST, Plaintiff received a text message from (270) 310-5138. Plaintiff received a total of two (2) text messages from this number. “Hey its

Chick. I gave you my NPN National Producer Number. You should have my personal cell but I can text you over a reminder with my card."

24. 9/30/25 - 1:01 pm - text from (702) 487-4629
25. 9/30/25 - 2:58 pm - text from (702) 487-4629
26. 10/01/25 - 1:52 pm - text from (702) 487-4629
27. 10/01/25 - 1:53 pm - text from (702) 487-4629
28. 10/01/25 - 5:15 pm - text from (702) 487-4629
29. 10/02/25 - 10:20 am - text from (702) 487-4629
30. 10/02/25 - 2:15 pm - text from (702) 487-4629
31. 10/02/25 - 2:41 pm - text from (702) 487-4629
32. 10/02/25 - 2:30 pm - call from (615) 455-9080

3. These are fully described in my answer 2 above.
4. I demand both federal and state statutory damages per call and text for each of the calls and texts set forth above in number 2. I also assert damages for the ongoing operation of United Health's marketing apparatus that won't quit calling me, even when its own general counsel said that I would he placed on the Do Not Call list. The phone calls are statutory $2,000 state and $1,500 federal, plus additional $2,000 per spoof. This is multiplied by the 7

calls and 37 texts. I will supplement shortly with the ongoing calls since the complaint was filed.

5. Sued them twice before and they settled and still do it. Still doing it now after this litigation. The general counsel literally said she would get me on the internal do not call list.
6. Registered November 17, 2024. Sometime before that.
7. (a) 615-519-8324, Hunter Thorpe paid the bill 2004-2013; I paid the bill 2013-2017; and the line was added to Judge Michael Brownfield Family Plan from 2017 to current, Verizon.

   (b) 256-304-4613; Verizon; Michael Brownfield

   (c) Google voice 615-861-1246. VOIP, Verizon
8. It was used in connection with Robin Black Piano Studio.
9. Owner and operator, Thorpe Piano, Robin Black Piano Studios; Lear Logistics (business courier 2017-2020.
10. Same phone numbers as above on number 7.
11. I will do so shortly when we set the protective order finalized.
12. I will do so shortly when we set the protective order finalized.
13. I will do so shortly when we set the protective order finalized.
14. (a) Judge Michael Brownfield Family Plan (b) none (c)

I, Robin Black, have read the forgoing Interrogatories and affirm that the facts and allegations are true.

Robin Black
Robin Black

Executed before me this 31st day of July, 2026.

KENYATTE HOGAN-MCCALL
NOTARY PUBLIC
STATE OF ALABAMA

Kenyatte Hogan-McCall
Notary Public

11-22-2028
My Commission Expires

Dated: July 31, 2026.

Respectfully Submitted,

***Attorneys for Plaintiff***

*/s/ Michael F. Braun*
Michael F. Braun (4167U50M)
5016 Centennial Blvd., Ste. 200
Nashville TN 37209
(615) 378-8942
mfb@braun-law.com

*/s/ L. Landis Sexton*
L. Landis Sexton (5057N71L)
3116 Southview Avenue
Montgomery, AL 36106
(334) 303-9359
Landis7777@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 31, 2026, a true and correct copy of the foregoing was on all counsel of record via e-mail to:

Jeffrey A. Backman (Fla. Bar No. 662501)
(*limited admission*)
Roy Taub (Fla. Bar No. 116263)
(*limited admission*)
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
jeffrey.backman@gmlaw.com
rene.vazquez@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS TULEY &
SAVARESE, P.C.

M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

*Attorneys for Defendants*
*USHEALTH Advisors, LLC*

*/s/ L. Landis Sexton*
L. LANDIS SEXTON

FILED
2026 Nov-23 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT I

## Supplemental Response to Request No. 8

In accordance with the Court's instruction that the parties reasonably resolve discovery disputes, Plaintiff supplements this response by producing the attached Vega Evidence Packet, together with Defendants' Notice of Related Action and publicly filed corporate disclosure statements.

The Vega litigation did not arise in isolation. Rather, it is one of several lawsuits arising from continuing unsolicited insurance marketing communications received by Plaintiff after years of repeated requests that such communications cease, prior litigation involving USHEALTH-affiliated insurance agents, and settlements negotiated by USHEALTH Group's in-house counsel, Erica Gibbs. Despite those repeated notices, prior lawsuits, and prior settlements, Plaintiff contends that substantially similar insurance marketing communications continued, ultimately resulting in the Vega lawsuit.

Throughout Plaintiff's interactions with individuals marketing USHEALTH-affiliated insurance products, Plaintiff consistently requested basic identifying information, including the identity of the person soliciting insurance and the company on whose behalf the solicitation was being made. Rather than providing transparent identifying information at the outset of the solicitation, Plaintiff contends that the marketing process repeatedly delayed or obscured the identity of the solicitor. In the Vega matter, the individual initiating the solicitation identified himself as "Jonathan Locke" before later providing a business card identifying himself as Jonathan Vega (NPN #21557263), while the Florida Department of Financial Services records reflect that his insurance license is issued under the name Jonathan Joseph Vega. Plaintiff submits this evidence because it demonstrates the difficulty Plaintiff encountered in identifying the individual soliciting insurance products and independently verifying the solicitor's licensing information despite repeated requests for identifying information.

Defendants have previously argued that USHEALTH Group neither marketed insurance products nor authorized or directed the communications giving rise to Plaintiff's claims. Plaintiff is producing the attached materials because Defendants have since filed a Notice of Related Action advising this Court that the Vega/Freedom litigation is related to Plaintiff's pending lawsuit against USHEALTH Advisors, LLC and USHEALTH Group, Inc. Plaintiff believes this filing, together with the attached evidence, provides important context for the Court's consideration of the continuing communications giving rise to the Vega litigation.

Plaintiff further provides publicly filed corporate disclosure statements showing that Freedom Life Insurance Company of America is a wholly owned subsidiary of USHEALTH Group, Inc. and that Freedom Life, USHEALTH Group, and USHEALTH Advisors have, in prior federal litigation, disclosed corporate relationships within the same corporate family. Plaintiff submits these publicly filed documents solely to provide context for the corporate relationships identified by Defendants themselves and to explain why the Vega litigation should not be viewed as an isolated event.

Plaintiff believes the attached materials constitute a complete and good-faith supplemental response to Request for Production No. 8 and further demonstrate the continuing nature of the communications that ultimately resulted in the filing of the Vega lawsuit.

**The Vega matter is not offered as evidence of an isolated communication, but as evidence of Plaintiff's continuing contention that, despite repeated requests to cease communications, prior litigation, and prior settlements, substantially similar insurance marketing communications nevertheless continued.**

FILED
2026 Nov-23 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT J

# EXHIBIT A

## Black v. Jonathan Joseph Vega and Freedom Life Insurance Company of America

## DeKalb County Circuit Court, Case No. CV202600001900

*This action was subsequently removed by Defendants to the United States District Court for the Northern District of Alabama, Case No.1:26-cv-01149-GMB.*

Plaintiff has filed a Motion to Remand challenging the removal, which remains pending. This exhibit is submitted solely to provide context for the continuing communications that gave rise to the Vega litigation and Plaintiff's Supplemental Response to Request for Production No. 8.

1095

IN THE CIRCUIT CIVIL COURT OF DEKALB COUNTY, ALABAMA

**ROBIN BLACK,** )
**Plaintiff,** )
) **CASE NO.**
**vs.** )
) **CV 2026 000019 00**
**JONATHAN JOSEPH VEGA** )

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD ADDITIONAL DEFENDANT**

COMES NOW Plaintiff, Robin Black, proceeding pro se, and respectfully moves this Honorable Court for leave to file a First Amended Complaint adding Freedom Life Insurance Company of America as an additional Defendant, and in support thereof states as follows:

1. Plaintiff filed the original Complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Alabama Telemarketing Act arising from unsolicited telemarketing calls and text messages made by Defendant Jonathan Joseph Vega.
2. At the time the original Complaint was filed, Plaintiff did not possess evidence establishing the identity of any insurer or principal for whom Defendant Vega may have been acting.
3. After filing the Complaint, Plaintiff obtained official licensing records from the Florida Department of Financial Services establishing that Defendant Jonathan Joseph Vega (NPN #21557263) maintained an active appointment with Freedom Life Insurance Company of America during the period in which the communications alleged in the Complaint occurred. The appointment became effective April 16, 2025 and remained active through December 31, 2027.A true and correct copy of the Florida Department of Financial Services licensing record is attached hereto as Exhibit A.
4. Plaintiff further possesses marketing materials supplied by Defendant Vega identifying himself as a licensed health insurance advisor and displaying his National Producer Number in connection with the solicitation of health insurance products.
5. Based upon this newly discovered evidence, Plaintiff has a good-faith basis to allege that Freedom Life Insurance Company of America may be subject to liability under principles of



FILED
JUN 08 2026
CIRCUIT CLERK
DeKALB COUNTY

1096

ELECTRONICALLY FILED
7/1/2026 2:04 PM
28-CV-2026-000019.00
CIRCUIT COURT OF
DeKALB COUNTY, ALABAMA
TODD GREESON, CLERK

NINTH JUDICIAL CIRCUIT COURT IN AND FOR DEKALB COUNTY

ROBIN BLACK,

Plaintiff,

v.

JONATHAN JOSEPH VEGA and FREEDOM LIFE INSURANCE COMPANY OF AMERICA,

Defendants.

CASE NO.: CV-2026-000019.00

**NOTICE OF FILING NOTICE OF REMOVAL**

Defendant Freedom Life Insurance Company of America ("Freedom Life") hereby files the attached Notice of Removal filed in the United States District Court for the Northern District of Alabama on July 1, 2026 attached hereto as Exhibit 1. Pursuant to 28 U.S.C. § 1446(d), the filing of this notice effects the removal of this case, and this Court shall proceed no further unless the case is remanded from the U.S. District Court.

Dated: July 1, 2026

Respectfully submitted,

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS TULEY & SAVARESE, P.C.
By: *__/s/ M. Andrew Donaldson__*
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

*Attorneys for Defendant*
*Freedom Life Insurance Company of America*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 1, 2026, a true and correct copy of the foregoing was served via e-mail and U.S. first class mail upon the following:

Robin Black
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324
rblackal@gmail.com

*Plaintiff Pro Se*

*/s/ M. Andrew Donaldson*
M. ANDREW DONALDSON

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ROBIN BLACK,

Plaintiff,

v.

JONATHAN JOSEPH VEGA and FREEDOM LIFE INSURANCE COMPANY OF AMERICA,

Defendants.

CASE NO.:

# NOTICE OF REMOVAL

Defendant Freedom Life Insurance Company of America ("Freedom Life"), pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, with full reservation of all defenses, hereby removes this action from the Ninth Judicial Circuit in and for DeKalb County, Alabama to the United States District Court for the Northern District of Alabama, Eastern Division. In support of this Notice of Removal, Freedom Life states as follows:

## I. Background

1. On or about June 15, 2026, Plaintiff Robin Black filed a First Amended Complaint in the Ninth Judicial Circuit in and for DeKalb County, Alabama, Case No. CV-2026-000019.00 (the "Amended Complaint"). A true and correct copy of

the Amended Complaint is attached hereto as Exhibit A.

2. The suit arises from alleged telephone calls and text messages to Plaintiff's cellular telephone that Plaintiff alleges were initiated in violation of, among other laws, the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

3. On June 22, 2026, Freedom Life received purported service of the Complaint and Summons by first class mail, which does not comply with service under the Alabama Rules of Civil Procedure. Freedom Life reserves all rights to challenge this improper service.

4. Freedom Life now timely removes this action to this Court.

## II. <u>Basis for Jurisdiction</u>

5. This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1331 and 1441(a). Count III, which is asserted under the TCPA, could have been originally filed in this Court pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction over all civil actions arising under the "Constitution, laws, or treaties of the United States."

6. Plaintiff's Complaint attempts to assert violations of a federal law, namely the TCPA. *See generally* Ex. A. The Supreme Court of the United States in *Mims v. Arrow Financial Services LLC*, 132 S. Ct. 740, 747-53 (2012), addressed the issue of whether the federal district courts have jurisdiction over TCPA claims,

holding that such a claim is, in fact, one that "arises under" the laws of the United States.

7. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Thus, this Court has federal question jurisdiction.

8. Based upon the foregoing, this Court has federal question jurisdiction over this action and venue is proper in this Court.

9. Furthermore, courts may exercise supplemental jurisdiction over state-law claims that lack an independent basis for federal jurisdiction when the claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution. Such a relationship exists when the claims derive from a common nucleus of operative facts and are of a nature that they would ordinarily be tried in a single judicial proceeding.

10. The Court has supplemental jurisdiction over Plaintiff's claims under Ala. Code §§ 8-19C-2, 8-19C-5, 8-19C-7, and 8-19A-12, as such claims are so related to the TCPA claim over which the Court has original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

11. Indeed, Plaintiff alleges that her federal claim for violation of the TCPA and state claims are derived from a single nucleus of operative facts, namely the same telephone calls and text messages alleged in the Amended Complaint.

12. Accordingly, all of Plaintiff's claims form part of the same case or controversy under Article III of the United States Constitution.

**III. <u>Rule of Unanimity</u>**

13. "When a civil action is removed solely on the basis of federal question jurisdiction, all defendants who have been properly joined and served must join in or consent to the removal of the action. The requirement that all defendants consent to and join a notice of removal in order for it to be effective is referred to as the 'unanimity rule.'" *Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015) (citing 28 U.S.C. § 1446(b)(2)(A)).

14. In response to inquiries from counsel for Freedom Life, Co-Defendant Jonathan Joseph Vega has consented to the removal of this action to this Court (assuming he has been properly served). Such "a statement by a removing defendant's attorney—an officer of the court—that a non-removing defendant consents to removal is sufficient to satisfy the rule of unanimity." *Gannon v. HSBC Card Servs., Inc.*, No. 3:10-CV-852-J-32JRK, 2011 WL 2448912, *2 (M.D. Fla. Apr. 5, 2011). *See also Martin v. Experian Info. Sols., Inc.*, No. 3:20-CV-531-J-39MCR, 2020 WL 10356238, *1 (M.D. Fla. Oct. 2, 2020); *Strutts v. Enter. Leasing*

*Co. of Fla., LLC*, No. 19-10113-CIV, 2019 WL 6838505, *4 (S.D. Fla. Dec. 16, 2019), report and recommendation adopted *sub nom. Strutts v. Henry*, 2020 WL 9549671 (S.D. Fla. Feb. 18, 2020); *Griffin v. Lowe's Companies, Inc.*, No. 6:18-CV-378-ORL-31TBS, 2018 WL 2676580, *2 (M.D. Fla. June 5, 2018).

**IV. <u>Notice Given</u>**

15. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff, and a copy will be promptly filed with the Clerk of the Court for the Ninth Judicial Circuit in and for DeKalb County, Alabama.

**V. <u>Removal is Timely Filed</u>**

16. This Notice has been timely filed within thirty (30) days of the purported service of the Amended Complaint, as required by 28 U.S.C. § 1446(b)(2).

**VI. <u>Pleadings and Process</u>**

17. Consistent with the requirement of 28 U.S.C. § 1446(a), copies of all state court process, pleadings, and orders purportedly served upon Freedom Life and otherwise filed in the state court are attached to this Notice of Removal as Exhibit B.

**VII. <u>Venue</u>**

18. Pursuant to 28 U.S.C. § 1441(a), venue in this District Court is proper because this action is currently pending in the Ninth Judicial Circuit in and for

DeKalb County, Alabama, which is in the same District as the United States District Court for the Northern District of Alabama, Eastern Division.

**VIII. Non-Waiver of Defenses**

19. Nothing in this Notice shall be interpreted as a waiver or relinquishment of Freedom Life's rights to assert any defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Federal Rule of Civil Procedure 12.

ACCORDINGLY, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, this Court has jurisdiction over this matter, and Defendant Freedom Life Insurance Company of America hereby removes this action from the Ninth Judicial Circuit in and for DeKalb County, Alabama to this Court.

Dated: July 1, 2026

Respectfully submitted,

HOLTSFORD GILLILAND HITSON HOWARD STEVENS TULEY & SAVARESE, P.C.
By: */s/ M. Andrew Donaldson*
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

GREENSPOON MARDER LLP
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub
(*pro hac vice* application forthcoming)

Jacob Mars
(*pro hac vice* application forthcoming)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-213-0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
jacob.mars@gmlaw.com
rene.vazquez@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant Freedom Life Insurance Company of America*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 1, 2026, a true and correct copy of the foregoing was served via e-mail and U.S. first class mail upon the following:

Robin Black
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324
rblackal@gmail.com

*Plaintiff Pro Se*

*/s/ M. Andrew Donaldson*
M. ANDREW DONALDSON

# U.S. District Court
# Northern District of Alabama (Eastern)
# CIVIL DOCKET FOR CASE #: 1:26-cv-01149-GMB

Black v. Vega
Assigned to: Magistrate Judge Gray M Borden
Case in other court: Circuit Court of Dekalb County, Alabama, cv-26-00019
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 07/01/2026
Jury Demand: Both
Nature of Suit: 485 Telephone Consumer Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Robin Black** represented by **Robin Black**
1812 Alabama Avenue, NW
Fort Payne, AL 35967
PRO SE

V.

**Defendant**

**Jonathan Joseph Vega**

**Defendant**

**Freedom Life Insurance Company of America** represented by **Michael Andrew Donaldson**
HOLTSFORD, GILLILAND, HIGGINS, HITSON, & HOWARD, P.C.
4001 Carmichael Road, Suite 300
Ste 300
Montgomery, AL 36106
334-215-8585
Email: adonaldson@hglawpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/01/2026 | 1 | NOTICE OF REMOVAL by Freedom Life Insurance Company of America from Circuit Court of Dekalb County, Alabama, case number cv-2026-19, filed by Freedom Life Insurance Company of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet)(KNS) (Entered: 07/02/2026) |
| 07/01/2026 | | AMENDED COMPLAINT against Freedom Life Insurance Company of America, Jonathan Joseph Vega, filed by Robin Black. (Deemed filed in circuit court. See Doc. 1 -1 pg 3)(KNS) (Entered: 07/02/2026) |
| 07/02/2026 | | Filing Fee: Filing fee $ 405, receipt_number AALNDC-5190501. related document 1 NOTICE OF REMOVAL by Freedom Life Insurance Company of America from Circuit Court of Dekalb County, Alabama, case number cv-2026-19, filed by Freedom Life Insurance Company of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, |

| | | |
|---|---|---|
| | | # 4 Civil Cover Sheet)(KNS). (Donaldson, Michael)ALND Rec # B-25160 Modified on 7/2/2026 (KNS). (Entered: 07/02/2026) |
| 07/02/2026 | 2 | Corporate Disclosure Statement by Freedom Life Insurance Company of America. filed by Freedom Life Insurance Company of America (Donaldson, Michael) (Entered: 07/02/2026) |
| 07/08/2026 | 3 | Unopposed MOTION for Extension of Time *to Respond to Complaint* by Freedom Life Insurance Company of America. (Donaldson, Michael) (Entered: 07/08/2026) |
| 07/08/2026 | 4 | TEXT ORDER granting the unopposed 3 Motion for Extension of Time to Respond to Complaint. It is ORDERED that Freedom Life Insurance Company of America shall respond to the complaint on or before 08/07/2026. Signed by Magistrate Judge Gray M. Borden on 07/08/2026. (CNP) (Entered: 07/08/2026) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
2026 JUL 30 P 1:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**ROBIN BLACK,**
**Plaintiff,**

**v.**

**JONATHAN JOSEPH VEGA and FREEDOM LIFE INSURANCE COMPANY OF AMERICA**
**Defendants**

**CASE NO.**

**1:26-cv-01149-GMB**

**PLAINTIFF'S MOTION TO REMAND TO THE CIRCUIT CIVIL COURT OF DEKALB COUNTY, ALABAMA**

Plaintiff, Robin Black ("Plaintiff"), appearing pro se, respectfully moves this Court pursuant to 28 U.S.C. § 1447(c) for an Order remanding this action to the Circuit Court of DeKalb County, Alabama, and in support thereof states as follows:

1. This action began where Plaintiff intended it to remain—from its inception—in the Circuit Court of DeKalb County, Alabama. Plaintiff selected that forum because it is the county in which she resides, where the alleged statutory violations were received, and where venue is expressly proper under Alabama law. Plaintiff further demonstrated her intent to remain in state court by expressly limiting her damages to $74,999.99, thereby eliminating any possibility of removal based upon diversity jurisdiction.
2. Notwithstanding Plaintiff's deliberate selection of an Alabama forum, Defendant Freedom Life Insurance Company of America removed the case to this Court based upon the presence of a federal claim under the Telephone Consumer Protection Act ("TCPA"), despite the Complaint also asserting multiple Alabama statutory causes of action arising from the same nucleus of operative facts.
3. Although federal courts possess limited jurisdiction over claims arising under federal law, removal statutes are strictly construed because removal implicates important principles of federalism and deprives a plaintiff of her chosen forum. The removing party bears the

burden of establishing that removal was proper, and any doubts concerning removal are to be resolved in favor of remand. Moreover, the Eleventh Circuit has recognized that a plaintiff's right to choose her forum is entitled to substantial deference, explaining that a defendant's right to remove and a plaintiff's choice of forum "are not on equal footing," and that uncertainties regarding removal jurisdiction are to be resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

4. The circumstances surrounding the removal of this action warrant careful scrutiny by this Court.
5. The Notice of Removal contains a Certificate of Service stating that Plaintiff was served by both electronic mail and United States first-class mail on July 1, 2026. Plaintiff, however, never received either the purported email transmission or the purported mailing. As set forth more fully below, Plaintiff respectfully submits that the failure to provide notice required by 28 U.S.C. § 1446(d) presents a procedural defect supporting remand.
6. Consequently, Plaintiff remained unaware that the case had already been removed when counsel for Defendant subsequently requested additional time to investigate the allegations contained in Plaintiff's Amended Complaint and requested Plaintiff's consent to an extension of time.
7. Believing the matter remained pending before the Circuit Court of DeKalb County, Plaintiff agreed to Defendant's requested extension as a professional courtesy. Had Plaintiff known that the action had already been removed to federal court, she would have immediately evaluated the propriety of the removal and exercised her right to promptly seek remand.
8. Additionally, the Notice of Removal represents that co-defendant Jonathan Joseph Vega consented to removal, yet the removal record contains no separate written consent executed by Mr. Vega, no joinder filed on his behalf, and no appearance by counsel representing Mr. Vega. Plaintiff respectfully requests that the Court determine whether the requirements of 28 U.S.C. § 1446(b)(2)(A) have been satisfied.
9. Plaintiff submits that the totality of the procedural history—including the timing of removal, the subsequent request for additional time to investigate the allegations, Plaintiff's lack of actual notice of removal, and the resulting delay in Plaintiff's ability to

challenge removal—supports careful judicial review of whether removal was procedurally proper and whether this action should remain before this Court.

10. This Motion therefore asks the Court to examine the procedural history in its entirety, construe the removal statutes narrowly as required by longstanding precedent, resolve any doubts in favor of state-court jurisdiction, and remand this action to the Circuit Court of DeKalb County, Alabama.

## A. <u>STATEMENT OF FACTS</u>

11. Plaintiff, Robin Black ("Plaintiff"), is an individual residing in DeKalb County, Alabama.
12. Defendant Jonathan Joseph Vega ("Vega") is alleged to have initiated or caused the initiation of telephone solicitations and text message communications giving rise to this action.
13. Defendant Freedom Life Insurance Company of America ("Freedom Life") was subsequently added as a Defendant based upon Plaintiff's allegations that Freedom Life bears responsibility for the conduct alleged in the Amended Complaint.
14. On or about June 8, 2026, Plaintiff commenced this action by filing her Complaint in the Circuit Court of DeKalb County, Alabama (CV-2026-000019.00)
15. Thereafter, Plaintiff filed her First Amended Complaint adding Freedom Life Insurance Company of America as an additional Defendant while continuing to assert claims arising from the same series of communications that form the basis of this litigation.
16. Plaintiff's First Amended Complaint asserts claims arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, together with multiple causes of action arising under Alabama law, including claims under the Alabama Telemarketing Act.
17. Plaintiff specifically alleged that venue was proper in DeKalb County because Plaintiff resides in DeKalb County and because the communications giving rise to the action were received there.
18. Plaintiff further expressly limited the total amount sought in this litigation to $74,999.99, exclusive of interest and taxable costs.
19. By expressly limiting the amount sought, Plaintiff affirmatively demonstrated her intent that this litigation proceed in Alabama state court and that diversity jurisdiction would not serve as a basis for removal.

20. On July 1, 2026, Defendant Freedom Life filed a Notice of Removal removing this action to the United States District Court for the Northern District of Alabama.
21. The Notice of Removal states that Defendant Jonathan Joseph Vega consented to removal. However, as of the filing of this Motion, the Court's docket reflects only appearances by counsel for Defendant Freedom Life Insurance Company of America. The docket does not reflect a Notice of Appearance on behalf of Defendant Vega, any filing indicating that counsel for Freedom Life also represents Defendant Vega, or any filing by Defendant Vega joining in or otherwise confirming his consent to removal.
22. Attached to the Notice of Removal was a Certificate of Service executed by counsel for Defendant stating that the Notice of Removal had been served upon Plaintiff by both electronic mail and United States first-class mail on July 1, 2026.
23. Plaintiff did not receive written notice of the removal by electronic mail.
24. Plaintiff did not receive written notice of the removal by United States mail.
25. Plaintiff has searched her email records and has been unable to locate any email transmitting the Notice of Removal.
26. Plaintiff will submit a sworn affidavit confirming these facts contemporaneously with, or in support of, this Motion.
27. Because Plaintiff did not receive the Notice of Removal, Plaintiff remained unaware that the action had been removed from the Circuit Court of DeKalb County.
28. Several days after filing the Notice of Removal, counsel for Defendant contacted Plaintiff requesting a thirty-day extension of time within which to investigate Plaintiff's allegations and prepare Defendants' response to the First Amended Complaint.
29. Specifically, counsel represented that Defendants required additional time to investigate Plaintiff's allegations, evaluate potential defenses, and determine an appropriate response to the Amended Complaint. Counsel further represented that the requested extension was necessitated by "pressing deadlines and obligations in counsel's other matters."
30. Believing the case remained pending before the Circuit Court of DeKalb County, Plaintiff agreed to the requested extension as a professional courtesy.
31. At the time Plaintiff consented to the requested extension, Plaintiff was unaware that the action had already been removed to federal court.

32. Because Plaintiff never received the Notice of Removal, Plaintiff was deprived of the opportunity to promptly evaluate the propriety of removal or timely determine whether to seek remand. Plaintiff remained unaware that the action had been removed until Monday, July 13, 2026, when Plaintiff received correspondence from the United States District Court regarding Defendants' Motion for Extension of Time. Only upon receiving that Court correspondence did Plaintiff first learn that the case had previously been removed on July 1, 2026.
33. Immediately upon learning that the action had been removed, Plaintiff contacted the Clerk of the Circuit Court of DeKalb County to determine what had occurred. The Clerk thereafter provided Plaintiff with a copy of the Notice of Removal that had been filed on July 1, 2026. Plaintiff then began reviewing the removal papers, the procedural history, and the governing statutes relating to removal jurisdiction in order to evaluate the propriety of removal and prepare the present Motion.
34. During the intervening period, Defendants had already demonstrated their ability to communicate with Plaintiff by email when counsel transmitted the July 8, 2026 request for an extension of time, and Plaintiff received official correspondence from the Court concerning that motion on July 13, 2026. Plaintiff nevertheless never received the Notice of Removal that Defendants certified had been transmitted by email and first-class mail.
35. After review, Plaintiff identified several procedural issues that Plaintiff respectfully submits warrant careful examination by this Court.
36. Plaintiff files this Motion promptly after discovering the removal and after reviewing the procedural record.
37. Plaintiff respectfully requests that this Court evaluate the removal record in its entirety and determine whether remand is appropriate under the applicable removal statutes.

## B. ARGUMENT

38. Federal courts are courts of limited jurisdiction, and removal statutes are to be strictly construed. The removing party bears the burden of demonstrating that removal was proper, and any doubts concerning the exercise of federal jurisdiction should be resolved in favor of remand.

39. While Plaintiff recognizes that federal district courts possess jurisdiction over Telephone Consumer Protection Act ("TCPA") claims pursuant to *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012), Plaintiff likewise recognizes that TCPA claims may be brought in either state or federal court. The existence of federal-question jurisdiction does not eliminate the removing party's obligation to comply with the procedural requirements governing removal. Nor does it relieve this Court of its obligation to carefully examine whether removal was accomplished in accordance with 28 U.S.C. §§ 1441, 1446, and 1447.
40. The Court Should Determine Whether Defendants Satisfied the Rule of Unanimity.
41. Plaintiff recognizes that Defendant Freedom Life relies upon the representation contained in its Notice of Removal that Defendant Jonathan Joseph Vega consented to removal.
42. Plaintiff respectfully submits, however, that the Court should independently determine whether the record demonstrates compliance with the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A). The federal docket reflects no Notice of Appearance by counsel for Defendant Vega, no filing indicating that counsel appearing for Freedom Life also represents Defendant Vega, and no filing by Defendant Vega joining in or otherwise confirming his consent to removal.
43. Moreover, subsequent correspondence from attorney Roy Taub expressly states, "We represent Freedom Life in the above-referenced lawsuit," but does not indicate that he or his firm also represents Defendant Vega.
44. Plaintiff does not contend that Defendant Freedom Life acted improperly by representing that Defendant Vega consented. Rather, Plaintiff respectfully requests that the Court determine whether the present record sufficiently demonstrates compliance with the unanimity requirement set forth in 28 U.S.C. § 1446(b)(2)(A).
45. Defendant Freedom Life cites authority from other jurisdictions for the proposition that counsel's representation regarding a co-defendant's consent is sufficient to satisfy the rule of unanimity. Plaintiff respectfully submits that, under the circumstances presented here, this Court should independently determine whether the record before it demonstrates compliance with the requirements of 28 U.S.C. § 1446(b)(2)(A). When considered together with the notice issues discussed below, Plaintiff respectfully submits that the

procedural history warrants careful judicial review of whether removal was properly accomplished.

46. Here, the procedural history presents unusual circumstances warranting the Court's review.

47. Defendants certified that written notice of the removal had been provided to Plaintiff by both electronic mail and first-class United States mail on July 1, 2026. Plaintiff, however, never received either communication. Plaintiff did not become aware that this action had been removed until July 13, 2026, when she received correspondence from this Court regarding Defendants' Motion for Extension of Time. Only after receiving that Court correspondence did Plaintiff contact the Circuit Clerk and obtain a copy of the previously filed Notice of Removal.

48. During the period in which Plaintiff remained unaware that the action had been removed, Defendants successfully communicated with Plaintiff through other means. On July 8, 2026, counsel emailed Plaintiff requesting an extension of time, explaining that additional time was needed to investigate Plaintiff's allegations, evaluate potential defenses, and because of "pressing deadlines and obligations in counsel's other matters." Plaintiff received that communication and, believing the action remained pending in the Circuit Court of DeKalb County, agreed to the requested extension as a professional courtesy. Plaintiff likewise received the Court's subsequent correspondence regarding that motion. Plaintiff nevertheless never received the Notice of Removal that Defendants certified had been provided to her.

49. Removal is an exception to a plaintiff's traditional right to choose her forum. Accordingly, removal statutes are strictly construed, and where legitimate questions exist concerning compliance with the procedural requirements for removal, remand is favored.

50. Under the circumstances presented here, Plaintiff respectfully requests that this Court exercise its authority under 28 U.S.C. § 1447(c) and remand this matter to the Circuit Court of DeKalb County, Alabama.

## C. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

1. Granting Plaintiff's Motion to Remand;
2. Remanding this action to the Circuit Court of DeKalb County, Alabama, pursuant to 28 U.S.C. § 1447(c); and
3. Awarding such other and further relief as this Court deems just and proper.

/s/ Robin Black 7/30/26

**ROBIN BLACK**
***Plaintiff, Pro Se***
rblackal@gmail.com
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 30th day of July, 2026, I served a true and correct copy of the foregoing Plaintiff's Motion to Remand upon counsel of record by electronic mail to:

Michael Andrew Donaldson
adonaldson@hglawpc.com

Roy Taub
roy.taub@gmlaw.com

Jacob Mars
jacob.mars@gmlaw.com

Counsel for Defendant Freedom Life Insurance Company of America.

Additionally, although Defendant Jonathan Joseph Vega has not appeared through counsel in this action, Plaintiff is providing a copy of this Motion by U.S. Mail to Defendant Vega at the address where service of process was previously completed in the underlying state court action.

<u>/s/ Robin Black 7/30/26</u>

**ROBIN BLACK**
***Plaintiff, Pro Se***
rblackal@gmail.com
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324

# EXHIBIT B

## CALL & TEXT SUMMARY

Summary of 22 unsolicited insurance telemarketing communications received between March 7, 2026 and April 15, 2026, after the filing of *Black v. USHEALTH Group, Inc., et al.*, illustrating the continuing nature of the communications despite prior litigation, repeated requests to cease, and Plaintiff's ongoing efforts to stop further contact.

# EXHIBIT – CALL & TEXT SUMMARY

| # | Date | Time | Type | Phone Number | Description / Notes |
|---|---|---|---|---|---|
| 1 | 3/7/2026 | 10:16 AM | Text | (615) 757-5922 | Initial unsolicited marketing text |
| 2 | 3/7/2026 | 7:47 PM | Text | (615) 757-5922 | Follow-up marketing text |
| 3 | 3/8/2026 | 10:16 AM | Text | (615) 757-5922 | Sunday contact (AL violation) |
| 4 | 3/18/2026 | 2:52 PM | Text | (615) 757-5922 | Continued solicitation |
| 5 | 3/18/2026 | 5:46 PM | Text | (615) 757-5922 | Continued solicitation |
| 6 | 3/18/2026 | 6:46 PM | Text | (615) 757-5922 | Continued solicitation |
| 7 | 3/19/2026 | 6:46 PM | Text | (615) 757-5922 | Continued solicitation |
| 8 | 3/20/2026 | 10:37 AM | Text | (615) 757-5922 | Continued solicitation |
| 9 | 3/21/2026 | 11:42 AM | Text | (615) 757-5922 | Continued solicitation |
| 10 | 3/23/2026 | 9:25 PM | Text | (615) 757-5922 | After 8 PM (AL violation) |
| 11 | 3/24/2026 | 9:03 AM | Call | (813) 440-4299 | Call from Defendant |
| 12 | 3/24/2026 | 9:05 AM | Call | (813) 440-4299 | Repeat call |
| 13 | 3/24/2026 | 9:06 AM | Text | (813) 440-4299 | Used alias 'Jonathan Locke' |
| 14 | 3/24/2026 | 9:17 AM | Text | (813) 440-4299 | Provided flyer (Vega identity) |
| 15 | 3/24/2026 | 3:21 PM | Text | (813) 440-4299 | Continued solicitation |
| 16 | 3/25/2026 | 7:11 PM | Call | (813) 440-4299 | Missed call |
| 17 | 3/25/2026 | 7:11 PM | Call | (813) 440-4299 | Missed call |
| 18 | 3/25/2026 | 7:11 PM | Call | (813) 440-4299 | Missed call (3 back-to-back) |
| 19 | 3/25/2026 | 7:11 PM | Text | (813) 440-4299 | Continued solicitation |
| 20 | 3/28/2026 | 11:12 AM | Text | (813) 440-4299 | Continued solicitation |
| 21 | 4/6/2026 | 4:44 PM | Text | (813) 440-4299 | Continued solicitation |

# EXHIBIT C

## Timeline of Communications

**March 7, 2026**

- Initial unsolicited text received.
- Marketing health insurance.

**March 7**

- Plaintiff requested identifying information.

**March 8**

- Sender identified products as UHC or BCBS

**March 18**

- Follow-up marketing text.

**March 19**

More follow up.

**March 20**

Plaintiff again requested identifying information.

**March 23**

Appointment scheduled.

**March 24**

14-minute recorded call with Jonathan Joseph Vega.

**March 25**

Three additional missed calls from same number after call.

# EXHIBIT D

## Text Message Communications

Attached are true and correct copies of the text communications preceding Plaintiff's conversation with Jonathan Joseph Vega.


7:00
+1 (615) 757-5922
Text Message • SMS
Sat, Mar 7 at 10:16 AM
Hi! PPO Health insurance plans with low deductible are still open for families, self.employed & indvs. May I send a quote? - Tia Reply 0 to opt-out.
Sat, Mar 7 at 6:48 PM
What company is it with. I'd like a quote
260-400 a month
Major networks
0-Low Deductible
100% Tax Benefit
NO CoPays
Annual Wellness
Catastrophic / Major Medical
Dental and Vision Options
When is a good day and time to review your options?
Which company? I'm trying to compare
Text Message • SMS

7:00

+1 (615) 757-5922

Sun, Mar 8 at 10:16 AM

UHC or BCBS

Wed, Mar 18 at 2:52 PM

Hey there! Just wanted to check in with you and see if this quote range catches your interest. Let me know with a simple Y or N. Thanks!

Wed, Mar 18 at 4:50 PM

Y

Okay, let's set up a time to go over the details of your options. It will only take a few minutes, but it's a lot to text. What time today or tomorrow would work best for you?

Wed, Mar 18 at 6:46 PM

Hey! Let's schedule a time to discuss your health insurance options! What day and time works best for you?

Thu, Mar 19 at 6:46 PM

Text Message · SMS

7:01

+1 (615) 757-5922

Thu, Mar 19 at 6:46 PM

Are you someone who values setting aside a specific time to gather more information? If you are please let me know a day and time that works for you!

Fri, Mar 20 at 7:54 AM

I do value my time. I work full time. Pick up my kids and have very little in between time for a call. That's why I've asked for a website or other identifying information so that I can ensure this is legit before I spend time on the phone with someone who contacted me about insurance out of the blue.

Fri, Mar 20 at 10:37 AM

Completely understand that. An advisor will be able to give you all that information when you speak with one. What time today or tomorrow works best for you?

Sat, Mar 21 at 11:42 AM

Text Message • SMS

schedule a time to speak with

7:01

+1 (615) 757-5922

Sat, Mar 21 at 11:42 AM

Hey good morning! Just wanted to see if you wanted to schedule a time to speak with an advisor today or tomorrow?

Mon, Mar 23 at 9:17 PM

I can speak very briefly tomorrow at 8am CST before work.

Okay perfect! I am going to get you in our calendar and have my senior Advisor Jonathan reach out to you tomorrow at 8am CST from his personal line (813). Have a blessed night and we look forward to speaking soon! What is the name I can put for your appointment? To also help Jonathan narrow down your options, do you have any pre-existing conditions or prescribed medications you need coverage for?

No I don't

Text Message • SMS

+1 (813) 440-4299

Text Message • SMS
Tue, Mar 24 at 9:06 AM

Hey good morning! This is Jonathan Locke health advisor. My assistant Tia set us up for a 8am CST appointment. Got a little busy?

https://bling.me/cmbhuvi7z0e2os60mvfryxuar?bs=icl

Here's my information!




Text Message • SMS

Hey Nicole, just wanted to

7:01




+1 (813) 440-4299

Tue, Mar 24 at 3:21 PM

Hey Nicole, just wanted to touch base and see if you had time to look me up lol

Wed, Mar 25 at 7:11 PM

Hey Nicole, just wanted to see if you had some time to talk today or tomorrow?

Sat, Mar 28 at 11:12 AM

Good morning, did you have some time to get on a call to see what options you might have for health insurance?

Mon, Apr 6 at 4:44 PM

Hey Nicole, did you still need insurance or can I take you off my list so I don't bother you anymore?

If you did not expect this message from an unknown sender, it may be spam.

Report Spam

Text Message · SMS

# EXHIBIT E

## Call Log

Attached is Plaintiff's call history showing the incoming and outgoing communications associated with the number used to schedule Plaintiff's conversation with Jonathan Joseph Vega.

7:09

Incoming Call 3/25/26 · 7:11 PM
Missed

Incoming Call 3/25/26 · 7:11 PM
Missed

Incoming Call 3/25/26 · 7:11 PM
Missed

Outgoing Call 3/24/26 · 9:06 AM
14 minutes

Incoming Call 3/24/26 · 9:05 AM
Missed

Incoming Call 3/24/26 · 9:03 AM
Missed

# EXHIBIT F

## Recorded Telephone Conversation - 3/24/26

On March 24, 2026, Plaintiff spoke directly with Jonathan Joseph Vega (initially representing his last name as “Locke”) for approximately fourteen minutes regarding the health insurance products being marketed through the preceding text message campaign.

During the call Mr. Vega:

- identified himself by name
- stated he held a Florida insurance license
- discussed private health insurance
- represented that he could shop health coverage
- later provided his licensing information and business card.

# Jonathan Vega USHEALTH - 3/24/26

**Transcribed by TurboScribe. Go Unlimited to remove this message.**

[Jonathan Joseph Vega ("Locke")]

Hello, hello?

[Robin Black]

Yes.

[Jonathan Joseph Vega ("Locke")]

Hey, can you hear me?

[Robin Black]

Yes, sir. Is this about the insurance?

[Jonathan Joseph Vega ("Locke")]

Yes, ma'am. Is this Nicole?

[Robin Black]

Uh, yes.

[Jonathan Joseph Vega ("Locke")]

Okay, awesome, awesome. Is now a good time to talk or are you a little busy?

[Robin Black]

Uh, I'm driving. I have very little time. I've been, she's been texting me, whoever's been texting me back and forth, and I, I, I have two jobs, I have kids, I have very little time, so you can talk to me while I'm on my way.

[Jonathan Joseph Vega ("Locke")]

Oh, yeah, you've probably got an hour to yourself.

[Robin Black]

Yeah, I'm on my way to work.

[Jonathan Joseph Vega ("Locke")]

Okay, gotcha.

[Robin Black]

So, um, that's why I keep asking her for some information, and she just keeps trying to do a phone call.

[Jonathan Joseph Vega ("Locke")]

Yeah, so that's how I have a lot of my assistants, because I just like to get on a phone call, um, and so I just want to properly introduce myself to you, just so you know who you're dealing with. Um, again, my name is Jonathan. Um, I hold a 215 license interstate.

Um, I am based out of Tampa, Florida. That's where my 813 Airward code comes from. Okay.

So pretty much what my license does is on your behalf, is I can shop every full coverage option on the public and private side for health coverage. Um, so kind of fill me in what's going on with your situation with you and the family. Do you guys currently have insurance now, or are you without insurance?

[Robin Black]

Um, so I'm divorced, um, so the children are through him, but I don't have insurance.

[Jonathan Joseph Vega ("Locke")]

Okay, gotcha. Um, I don't know whether to say congratulations or I'm sorry.

[Robin Black]

Congratulations.

[Jonathan Joseph Vega ("Locke")]

Okay, good. All right. Good, good.

On to a new chapter of your life.

[Robin Black]

Awesome. Love that for you.

[Jonathan Joseph Vega ("Locke")]

Um, okay. So as far as you go, um, how long have you been without insurance now?

[Robin Black]

Um, probably about six months.

[Jonathan Joseph Vega ("Locke")]

Six months. Okay, gotcha. And then are we looking for insurance now to get something covered?

Or we're just looking, you know, just to have a peace of mind in case God forbid something happens?

[Robin Black]

Yeah, just for peace of mind. I mean, I, um, I, like I said, I work a lot, but I don't, I don't usually get very sick or anything like that. So usually if I get sick or something, I just go to a walk-in clinic or just, I just, I don't have time.

I just go to Walmart and get allergy meds or whatever. Um, so I just don't have a lot of, um, you know, but if something happened, I probably, you know, I need to make sure I've got coverage.

[Jonathan Joseph Vega ("Locke")]

Yes, ma'am. Okay. Absolutely.

So you're, you're pretty much somebody that wants to have it. That really doesn't need it rather than not need it and you don't have it. You know what I mean?

[Robin Black]

Yes, sir.

[Jonathan Joseph Vega ("Locke")]

Okay. Awesome. Um, so as far as you're employed, do you have any W-2 benefits?

Are you offered health insurance to your job or are you self-employed?

[Robin Black]

No, sir. I'm a, I'm a hairstylist. So I'm like 1099.

[Jonathan Joseph Vega ("Locke")]

Okay. Awesome.

[Robin Black]

Yeah.

[Jonathan Joseph Vega ("Locke")]

Okay. So you're, you're self-employed. Okay.

Awesome. Love that for you. Okay.

Um, so typically what I can do is if I can find something that's affordable to you that checks on the level of coverages you're looking for, um, and the affordability there for you, when are you looking for your new policy to start?

[Robin Black]

Um, I need to get something pretty quickly. Um, but I, I, I want to be honest. I'm, I'm skeptical.

Um, because I got scammed about a month ago, somebody called and said health insurance and I gave them all my information and it ended up, I got my identity stolen and, um, you know, so I, I really want to see something like that proves you are who you say you are. Um, it's okay.

[Jonathan Joseph Vega ("Locke")]

No, no, I, I completely understand, especially the world we live in. You know, unfortunately, you know, I I'm so one thing about me, Nicole is I'm a family person. I'm very transparent and I'm very upfront.

Um, so I have no problem at all sending you my website, my business card and stuff like that. You can see my NPN number, which is my national registry number for insurance. So you can see that I'm a real agent.

Um, I have no problem doing that for you. So I'm just here to help you the best I can for your situation. Okay.

[Robin Black]

Okay. Okay.

[Jonathan Joseph Vega ("Locke")]

All right. Awesome. Um, so, so you definitely need insurance starting as soon as possible.

So typically there's two routes we can go. The first one is going to be the ACA or Obamacare as we all know it, which is based on your income. And the other one is actually a medically underwritten option.

That's based on your health. So as far as your income goes, do you know if you qualify for any government assistance or any subsidies?

[Robin Black]

I probably do. I just don't understand all of that. Um, so basically, you know, before the divorce, I was a stay at home mom.

So, um, you know, I'm, I'm working, but I'm building my clientele and, and all of that. And so, um, you know, it's not, um, it's not as, as much as I would hope. Um, so, um, I don't really have, um, a realistic idea just yet regarding what my income's going to be.

[Jonathan Joseph Vega ("Locke")]

Okay. Got you. So one thing I always recommend is somebody that's self-employed like yourself, that fluctuates, especially in the beginning of their career and stuff like that.

Um, I always recommend the private side of health coverage. The reason being, you will see much lower deductible with a higher level of coverage with a more affordable rate than the, um, marketplace, because, you know, we can definitely put you on a marketplace plan and say you make, you know, about 20,000 here, but then you end up doing very well for yourself and you make like 80, 90, you would have to owe back all that subsidy back on your taxes versus on the private insurance.

You can actually write off all that monthly premium to your business, which is nice. Okay. So that, that, that peace of mind you have, you know, do I, do I owe taxes this year for, you know, everything that is, that is gone with private insurance, you won't owe anything.

It's all tax deductible for you, which is nice.

[Robin Black]

Okay.

[Jonathan Joseph Vega ("Locke")]

So a typical rule of thumb for health coverage outside of a subsidy and outside of an employer, it's added zero to your age plus or minus 10%. So Tia has your age as 38 years young. Is that correct?

[Robin Black]

I'm sorry. I'm sorry. It went out right there.

I'm so sorry.

[Jonathan Joseph Vega ("Locke")]

It's okay. So typical rule of thumb for health coverage outside the ACA or the, um, and for

coverage, it's going to be added zero to your age plus or minus 10%. And Tia has that you're 38 years young.

Is that correct?

[Robin Black]

Yeah.

[Jonathan Joseph Vega ("Locke")]

Okay. So you can expect your coverage between 380 and 420. Is that comfortable for you on a monthly basis for a full coverage option?

[Robin Black]

I, I, I don't know that I can do that right now. Um, okay. Gotcha.

[Jonathan Joseph Vega ("Locke")]

Um, we can also look at plans that are like a catastrophic, um, they just don't have anything health wise, but they do have something, you know, God forbid you're diagnosed with cancer, heart attack, or stroke, um, there's an accident protector on there. That's usually a lot more affordable and usually comes with the inheritance. It's usually around like 180 is 200.

[Robin Black]

Okay. Uh, that, that's more, more. Yeah.

Yeah. And I may, I may be able to talk to, I mean, can I change it later or like what are the, you know, if I start making more, can I change it later or what are the, what are the rules regarding that?

[Jonathan Joseph Vega ("Locke")]

Right. So with this one, it's basically an insurance where we call it as a combo plan. So it's a supplemental plan that just adds like accident protector, um, an association for you with vision and dental.

Um, but that's no problem. If you ever wanted to just go for the health, but the only thing with private insurance, it is medically underwritten, right? So we do have to put an application and just see even if it's a real option, you know, I could definitely explain the plan to you, but it's not a real option unless you're approved for it.

Does that kind of make sense?

[Robin Black]

Okay.

[Jonathan Joseph Vega ("Locke")]

Um, but as far as your health goes, do you have any preexisting conditions or any prescribed medications you need coverage for?

[Robin Black]

No, sir. I try to just be very, um, like holistic and just kind of, Oh, I love that.

[Jonathan Joseph Vega ("Locke")]

Okay.

[Robin Black]

Handle things myself.

[Jonathan Joseph Vega ("Locke")]

Let your body just trying to figure it out.

[Robin Black]

Yeah.

[Jonathan Joseph Vega ("Locke")]

I definitely get that. Okay. Awesome.

Um, do you currently seek any counseling right now or any psychiatric visits?

[Robin Black]

I probably need it after this divorce, but, uh, you know, um, I, I, I, I don't have time. Yeah, I know.

[Jonathan Joseph Vega ("Locke")]

Gotcha. Okay. No worries.

And then think back with me and it's a little hard to do, especially how busy you are, but can you think of any hospitalization or surgery you had in the past five and 10 years?

[Robin Black]

Uh, no, just, you know, uh, hospitalization was just, you know, my kids, you know, having, having babies, but that's perfectly standard.

[Jonathan Joseph Vega ("Locke")]

Okay. Awesome. All right.

Honestly, Nicole, you are a fantastic candidate for private insurance. So what I want to do next is build up an accurate quote in your area. Uh, what is your current zip code?

[Robin Black]

Uh, three, five, nine, six, seven, six, seven.

[Jonathan Joseph Vega ("Locke")]

And then what is your date of birth?

[Robin Black]

Um, 12 one. Oh, I'm sorry. I'm trying to merge into traffic.

[Jonathan Joseph Vega ("Locke")]

I'm sorry. Take your time. Take your time.

[Robin Black]

I'm sorry. Um, honestly, if you can send me an email, I, I, this is where I'm getting a little nervous because, you know, I gave this person my information and my identity got stolen and, and, um, and, and so I just, do you, can you send me an email with like your contact info and stuff like that so that I can just, I don't mean to be rude. I just, you know, the last time it sounded legit and, um, and then I've spent a month dealing with all of this stuff and, um, and so I just, that's, that's why I kept asking her for, um, a website or something.

[Jonathan Joseph Vega ("Locke")]

So I just sent you over my business card and my virtual business card. You can click on my virtual business card and it'll pop up all my contact info.

[Robin Black]

Did you, um, did you text that to me?

[Jonathan Joseph Vega ("Locke")]

Yes, ma'am.

[Robin Black]

Okay. And does that have that, whatever that number is so I can just, yeah. So where do I like, how do I look all that stuff up regarding?

[Jonathan Joseph Vega ("Locke")]

So on, if you look on my business card, right, you'll see my NPN number. If you go to nipper.com, which is N P I R that's the national producer of insurance registry for the, um, the state you're in. If you put my number in there, my information will pop up as a real agent.

[Robin Black]

Okay. All right. So, um, with your permission, what I'd like to do, cause I'm about to get to work and, um, the traffic is crazy.

Um, um, I'm sorry. Um, can I, I will on my lunch break, I will look all of this up and then can I give you a call back or can we schedule another call to do all of that?

[Jonathan Joseph Vega ("Locke")]

Yeah, absolutely. I am booked pretty far today. Just shoot me a text.

That's probably the better option. I'm busy all the way until five o'clock.

[Robin Black]

Okay. I may have more options tomorrow. Um, Wednesdays are usually a little slow.

Um, so I may have more options, but, and, and again, I apologize. I just want to make sure you're perfectly fine. Oh my God.

My parents like lit into me and I think with just everything that was going on and my dad was like, you gave someone your personal info and blah, blah, blah. And I think just everything that's been going on, I just, um, I didn't think about it before.

[Jonathan Joseph Vega ("Locke")]

I completely understand.

[Robin Black]

Yeah.

[Jonathan Joseph Vega ("Locke")]

Oh yeah. And then one good thing too is if, if I do find you a plan that fits your needs and stuff like that, sure. We do submit an application for you and you do get approved.

Um, I am actually your personal broker for the lifetime of your policy. So our relationship doesn't end. Um, you're stuck with me until the age 55 or if you don't want the policy anymore.

Okay.

[Robin Black]

Okay. Okay. So like, if I have questions or life changes or whatever, then I just contact you.

[Jonathan Joseph Vega ("Locke")]

Yes, ma'am.

[Robin Black]

Yes, ma'am.

[Jonathan Joseph Vega ("Locke")]

I'm here. I, my job, so I'm self-employed as well. So my job is to make insurance a stress-free and simple as I can for you.

[Robin Black]

Okay. Okay. All right.

Well, I hope you get to work from home and don't have to sit in traffic.

[Jonathan Joseph Vega ("Locke")]

Oh, I already went through traffic at Tampa. Traffic is horrible in the morning. I live 15 minutes from my office.

It took me a whole hour.

[Robin Black]

Oh gosh. Oh my gosh. Well, at least you have pretty weather, pretty weather.

So that's a lot better.

[Jonathan Joseph Vega ("Locke")]

Yes. I'm very blessed there. I cannot complain at all.

[Robin Black]

Yes. Okay. Well, I will take a look at this and I'm sorry if it takes me a little while to get back to you.

[Jonathan Joseph Vega ("Locke")]

Um, take, take your time. I'm in no rush. Whenever you're ready.

I I'm a no pressure type of person. You know, I'm just literally here to help you the best I can.

[Robin Black]

Okay. Thank you so much. And I appreciate your help.

[Jonathan Joseph Vega ("Locke")]

Of course.

[Robin Black]

Absolutely.

[Jonathan Joseph Vega ("Locke")]

Well, you have a good day at work. Don't work too hard.

[Robin Black]

And then I'll talk to you later. Thank you. Bye.

[Jonathan Joseph Vega ("Locke")]

All right. Bye.

**Transcribed by TurboScribe. Go Unlimited to remove this message.**

# EXHIBIT G

## Florida Licensing Verification

During the March 24, 2026 text conversation, the individual initiating the insurance solicitation identified himself to Plaintiff as **"Jonathan Locke"** before sending his business card identifying himself as **Jonathan Vega** (NPN #21557263).

Plaintiff subsequently verified through the Florida Department of Financial Services that the individual is licensed under the name **Jonathan Joseph Vega**, License No. G229212, National Producer Number (NPN) 21557263, and was actively appointed with Freedom Life Insurance Company of America at the time of the communications.

Accordingly, Plaintiff contends that Defendant conducted insurance solicitation using the name **"Jonathan Locke"** while holding a Florida insurance license issued under the name **Jonathan Joseph Vega**. Plaintiff submits this evidence because it is relevant to Defendant's identity during the communications and to Plaintiff's contention that the use of an alternate name raises questions regarding compliance with Florida insurance licensing requirements.

Following the telephone conversation, Plaintiff verified Jonathan Joseph Vega's insurance license through the Florida Department of Financial Services.

The licensing record confirms:

• NPN 21557263

• Active Florida license

• Appointment with **Freedom Life Insurance Company of America**.

Licensee Search

# Licensee Detail

**License #:** G229212

**Full Name:** VEGA, JONATHAN JOSEPH

**Business Address:** 12198 SE 96 TERR
BELLEVIEW, FL 34420

**Mailing Address:** 12198 SE 96 TERR
BELLEVIEW, FL 34420

**Email:** JONATHANV1489@GMAIL.COM

**Phone:** (352) 875-2679

**County:** Marion

**NPN #:** 21557263

## Continuing Education Statistics

**CE Due Date:** 12/31/2027

**Continuing Education Status:** In Progress

**Number of Hours Required:** 24

**Number of Hours Completed:** 0

### Valid Licenses

| Type | Issue Date | Qualifying Appointment |
|---|---|---|
| LIFE INCL VAR ANNUITY & HEALTH (0215) | 4/14/2025 | YES |

### Active Appointments

**LIFE INCL VAR ANNUITY & HEALTH (0215)**

| Company Name | Issue Date | Exp Date |
|---|---|---|
| FREEDOM LIFE INSURANCE COMPANY OF AMERICA | 4/16/2025 | 12/31/2027 |

### Invalid Licenses

No invalid licenses found.

### Inactive Appointments

No inactive appointments found.

Copyright © Florida Department of Financial Services 2026

# EXHIBIT H

## USHEALTH Group's Jurisdictional Position Compared with Publicly Available Corporate Information

In the Motion to Dismiss filed November 13, 2025 , USHEALTH Group argues that it:

- does not market or sell insurance products;
- did not authorize, initiate, make, place, or direct the communications at issue;
- never hired, contracted with, or authorized anyone to make telemarketing calls or text messages.

Plaintiff submits the following publicly available documents because they provide additional factual context concerning the relationship between USHEALTH Group and Freedom Life Insurance Company of America.

Specifically:

- The Florida licensing records for Jonathan Joseph Vega identify Freedom Life Insurance Company of America as the appointing insurer.
- Freedom Life's address, as reflected on publicly available information and company materials, is 300 Burnett Street, Suite 200, Fort Worth, Texas, the same address identified as the corporate office of USHEALTH Group.
- The USHEALTH Group website likewise lists Freedom Life Insurance Company of America at 300 Burnett Street, Suite 200, using the USHEALTH Group contact information and email address.
- The same website further states that Freedom Life Insurance Company of America, National Foundation Life Insurance Company, and Enterprise Life Insurance Company are wholly owned subsidiaries of USHEALTH Group, Inc.

Plaintiff submits these documents so the Court may consider them together with the other evidence produced in response to Request for Production No. 8.

USHEALTH GROUP A UnitedHealthcare Company

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

# Contact Form

(/)

**Name ***

**Email ***

**Message ***

✓
Your message was successfully sent!

# Contacts

**Freedom Life Insurance Company of America**

300 Burnett Street, Suite 200

Fort Worth, TX 76102-2734

info@ushealthgroup.com

800.387.9027

Freedom Life Insurance Company of America

Attn: Payment Processing Center

P.O. Box 650474

Dallas, TX 75265-0474

---

**National Foundation Life Insurance Company**

300 Burnett Street, Suite 200

Fort Worth, TX 76102-2734

info@ushealthgroup.com

800.221.9039

National Foundation Life Insurance Company

Attn: Payment Processing Center

P.O. Box 650474

Dallas, TX 75265-0474

---

**Enterprise Life Insurance Company**

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734

info@ushealthgroup.com

800.606.4482

We are committed to keeping you informed about how we use technology and data, including how we use cookies and similar tools to make your use of this website easy and to keep it working properly. Our **Privacy Policy** and **Terms of Use** detail what information we collect and what we may share with third parties.

**By clicking this checkbox, I confirm that I have reviewed and agree to the Privacy Policy and Terms of Use. I understand that I may be asked to reaccept the terms of the notices periodically.**

USHEALTH GROUP A UnitedHealthcare Company (/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Enterprise Life Insurance Company

Attn: Payment Processing Center

P.O. Box 650474

Dallas, TX 75265-0474

# Business Hours

**Monday-Friday:** 10am to 8pm

**Saturday:** 11am to 3pm

**Sunday:** Closed

(https://www.facebook... (https://twitter... (https://www.linkedin... (https://www.instagram...

## Let us help you customize your health coverage today.

Get Started (http://ushagent.com/tykabooker/get-quote/)

About Us

(http://ushagent.com/tykabooker/aboutushg/)

PPO Networks

(http://ushagent.com/tykabooker/ppo-networks/)

Contact Home Office

We are committed to keeping you informed about how we use technology and data, including how we use cookies and similar tools to make your use of this website easy and to keep it working properly. Our **Privacy Policy** and **Terms of Use** detail what information we collect and what we may share with third parties.

**By clicking this checkbox, I confirm that I have reviewed and agree to the Privacy Policy and Terms of Use. I understand that I may be asked to reaccept the terms of the notices periodically.**

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company
(/)

(https://www.ushealthgroup.com/contact-us/)

Privacy Policy (https://www.ushealthgroup.com/privacy-policy/)

Products (http://ushagent.com/tykabooker/our-health-products/)

Mission of HOPE (http://ushagent.com/tykabooker/hope/)

Terms of Use (https://www.ushealthgroup.com/terms-of-service/)

**Legal Notice :** All products are underwritten and issued by Freedom Life Insurance Company of America, National Foundation Life Insurance Company and Enterprise Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. All products not available in all states. Contact a Licensed Insurance Agent for additional information.

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734 (https://goo.gl/maps/mzoTsvRbABeNs7tR7)

1-800-387-9027 (tel:+18003879027)

info@ushealthgroup.com (mailto:info@ushealthgroup.com)

We are committed to keeping you informed about how we use technology and data, including how we use cookies and similar tools to make your use of this website easy and to keep it working properly. Our **Privacy Policy** and **Terms of Use** detail what information we collect and what we may share with third parties.

**By clicking this checkbox, I confirm that I have reviewed and agree to the Privacy Policy and Terms of Use. I understand that I may be asked to reaccept the terms of the notices periodically.**

USHEALTH GROUP A UnitedHealthcare Company (/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

7:00 AM - 7:00 PM CT Monday - Friday
8:00 AM - 1:00 PM CT Saturday

(mailto:media@ushealthgroup.com)

Media Inquiries : media@ushealthgroup.comiv
Media Inquiries : media@ushealthgroup.com
(mailto:media@ushealthgroup.com)

Copyright 2026 © USHEALTH GROUP All rights reserved

We are committed to keeping you informed about how we use technology and data, including how we use cookies and similar tools to make your use of this website easy and to keep it working properly. Our **Privacy Policy** and **Terms of Use** detail what information we collect and what we may share with third parties.

**By clicking this checkbox, I confirm that I have reviewed and agree to the Privacy Policy and Terms of Use. I understand that I may be asked to reaccept the terms of the notices periodically.**

us health group address

All Maps Images Forums Shopping Videos More Tools

AI Overview

The corporate office address for USHEALTH Group is 300 Burnett Street, Suite 200, Fort Worth, TX 76102-2734.

## Contact Details

- **Phone:** 1-800-387-9027
- **Email:** info@ushealthgroup.com
- **Official Website:** USHEALTH Group Contact

## Subsidiary Companies at this Address

- Freedom Life Insurance Company of America
- National Foundation Life Insurance Company
- Enterprise Life Insurance Company USHEALTH Group

USHEALTH Group

**Contact Us - USHEALTH Group**

Contact USHEALTH Group * Freedom Life Insurance. Company of America. 300 Burnett Street, Suite 200. Fort Worth, TX 76102-2734. inf...



Show all

AI responses may include mistakes. For financial advice, consult a professional. Learn more

USHEALTH Group
https://www.ushealthgroup.com › contact-us

## Contact USHEALTH Group

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734. Business Hours 7:00 AM - 5:00 PM CT Monday - Friday · 8:00 AM - 1:00 PM CT Saturday · 300 Burnett ...

## People also ask

Is the USHEALTH Group the same as UnitedHealthCare?

What is the claims address for the USHEALTH Group?

Is freedom life insurance part of UMR?

What is UnitedHealthCare's main address?

USHEALTH Group
https://www.ushealthgroup.com

## USHEALTH Group: Affordable Health Coverage Plan Quotes

Affordable, personalized **health**, dental, vision & life insurance plans from **USHEALTH Group**. across 33 states. Contact a Licensed Insurance Agent for ...

USHEALTH Group
https://ushagent.com › johnvnuk › contact

## USHEALTH Group | Family and Individual Health Coverage

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734

USHEALTH Group
https://www.ushealthgroup.com › member-services

## Member Services | USHealth Group | Manage Your ...

**300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734** 1-800-387-9027 info@ushealthgroup.com 7:00 AM - 7:00 PM CT Monday - Friday 8:00 AM - 1:00 PM CT Saturday

USHEALTH Group
https://provider.ushealthgroup.com

## USHEALTH Group Providers

We are committed to supporting our **healthcare** professionals so they can quickly access the member information they need to care for our members.

Seamless.AI
https://seamless.ai › ... › Insurance › Texas › Fort Worth

## Ushealth Group Org Chart, Office Staff Directory

Phone Number. (952) 936-xxxx ; Corporate Office Address. **300 Burnett Street Fort Worth, 76102** ; Website. ushealthgroup.com ... Read more

sbhi.app
https://sbhi.app › contact-us

## Contact USHEALTH Group

**300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734** [email protected] 800.387.9027. Business Hours 7:00 AM - 5:00 PM CT Monday - Friday. Monday - Friday 8: ...

RocketReach
https://rocketreach.co › ushealth-group-profile_b5c3e5...

## USHEALTH Group Information

Address, **300 burnett street Suite 200, Fort Worth, Texas 76102**, US ; Phone, +1 817-878-3777 ; Industry, Insurance, Life and Health Insurance, Insurance Brokers. Read more

Better Business Bureau
https://www.bbb.org › ... › Health Insurance

## USHEALTH Group | BBB Business Profile

Not BBB Accredited. **Health Insurance in Fort Worth, TX**. See BBB rating, reviews, complaints, and more.

## People also search for

- us health group address **near birmingham, al**
- Us health Group **phone number**
- us health group address **near pell city, al**
- Us health Group **Provider phone number for eligibility**
- Us health Group **claims mailing** address
- Us health Group **provider phone number 866 745**
- Us health Group **Provider phone number**
- Us health Group **Provider portal login**

1 2 3 4 5 6 7 8 9 10 Next

USHEALTH® GROUP
Part of UnitedHealthcare®

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

# Contact USHEALTH Group

We're ready to help. Our goal is to answer your questions and get you where you need to be. Please use the Links and Form below to contact us.

## Welcome! We're glad you're here.

If you are are a existing customer click here to access: **MyUSHG** or click here for **Member Services**

If you are looking for a career opportunity as a sales agent click here: **Become an Agent**

**Notice**

We use cookies and similar tools to make your use of this website easy and to keep it working properly. We may share data about you and how you use the site with third parties, such as analytics and marketing partners. Learn more in our **Privacy Policy** and **Terms of Use**. By continuing to use the site, you agree to this.

USHEALTH GROUP
Part of UnitedHealthcare®

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Message

I'm not a robot

reCAPTCHA

Submit

**Freedom Life Insurance Company of America**

300 Burnett Street, Suite 200
Fort Worth, TX 76102-2734

info@ushealthgroup.com

800.387.9027

**National Foundation Life Insurance Company**

300 Burnett Street, Suite 200
Fort Worth, TX 76102-2734

## Notice

We use cookies and similar tools to make your use of this website easy and to keep it working properly. We may share data about you and how you use the site with third parties, such as analytics and marketing partners. Learn more in our **Privacy Policy** and **Terms of Use**. By continuing to use the site, you agree to this.

USHEALTH GROUP Part of UnitedHealthcare®

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Fort Worth, TX 76102-2734

info@ushealthgroup.com

800.606.4482

**Media Contact**

media@ushealthgroup.com

## Business Hours

7:00 AM - 5:00 PM CT Monday - Friday

## Customer Service Hours

7:00 AM - 7:00 PM CT Monday - Friday
8:00 AM - 1:00 PM CT Saturday

By signing up, you are agreeing to our Privacy Policy and Terms of Use. You can unsubscribe at any time.

## Notice

We use cookies and similar tools to make your use of this website easy and to keep it working properly. We may share data about you and how you use the site with third parties, such as analytics and marketing partners. Learn more in our **Privacy Policy** and **Terms of Use**. By continuing to use the site, you agree to this.

**USHEALTH® GROUP**
Part of UnitedHealthcare®

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Get Started

About Us

PPO Networks

Contact Home Office

Privacy Policy

Health Data Privacy Policy

Blog

Member Services

HOPE

Terms of Use

**Legal Notice :** All products are underwritten and issued by Freedom Life Insurance Company of America, National Foundation Life Insurance Company and Enterprise Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. All products not available in all states. Contact a Licensed Insurance Agent for additional information.

## Notice

We use cookies and similar tools to make your use of this website easy and to keep it working properly. We may share data about you and how you use the site with third parties, such as analytics and marketing partners. Learn more in our **Privacy Policy** and **Terms of Use**. By continuing to use the site, you agree to this.

USHEALTH GROUP
Part of UnitedHealthcare®

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Media Inquiries : media@ushealthgroup.com

Copyright 2026 © USHEALTH GROUP All rights reserved | Sitemap

## Notice

We use cookies and similar tools to make your use of this website easy and to keep it working properly. We may share data about you and how you use the site with third parties, such as analytics and marketing partners. Learn more in our **Privacy Policy** and **Terms of Use**. By continuing to use the site, you agree to this.

# EXHIBIT I

## Corporate Disclosure Statements and Corporate Relationships

Plaintiff submits the attached Corporate Disclosure Statements because they are publicly filed documents identifying the corporate relationships among the entities involved in this litigation.

The first disclosure was filed in Black v. Freedom Life Insurance Company of America, Case No. 2:26-cv-00990, currently pending. In that filing, Freedom Life disclosed that Freedom Life Insurance Company of America is a wholly owned subsidiary of USHEALTH Group, Inc., and further disclosed that UnitedHealth Group Incorporated indirectly owns more than ten percent (10%) of Freedom Life Insurance Company of America.

The second disclosure was filed in Anthony Dahl and Teddi Dahl v. USHEALTH Advisors, LLC, USHEALTH Group, Inc., Freedom Life Insurance Company of America, and Jesus Burga, Case No. 1:22-cv-00249 (D. Colo.), litigation involving the same insurance entities named in Plaintiff's action. In that filing, Defendants disclosed that USHEALTH Advisors, LLC, USHEALTH Group, Inc., and Freedom Life Insurance Company of America are wholly owned indirect subsidiaries of UnitedHealth Group Incorporated.

Plaintiff submits these publicly filed disclosures because Defendants have placed the relationships among these entities at issue in this litigation. The disclosures are offered solely to provide factual context regarding the corporate structure identified by Defendants themselves. When considered together with the Florida licensing records, publicly available USHEALTH Group website materials, and Defendants' own Notice of Related Action, these disclosures assist in understanding the relationships among the entities involved in the communications giving rise to the Vega litigation.

FILED
2026 Jul-02 AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ROBIN BLACK,

Plaintiff,

v.

JONATHAN JOSEPH VEGA and FREEDOM LIFE INSURANCE COMPANY OF AMERICA,

Defendants.

CASE NO.: 1:26-cv-01149

---

**DISCLOSURE STATEMENT PURSUANT TO LOCAL RULE 3.4**

Pursuant to Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.4 of The U.S. District Court for the Northern District of Alabama, and to enable District Judges and Magistrate Judges to evaluate Possible disqualification or recusal, the undersigned counsel for Defendant Freedom Life Insurance Company of America, in the above-captioned matter, sets forth the following:

1. Freedom Life Insurance Company of America is a wholly-owned subsidiary of USHEALTH Group, Inc.

2. More than 10% of Freedom Life Insurance Company of America's stock is owned, indirectly, by UnitedHealth Group, Inc. which is a publicly traded

corporation.

Respectfully submitted,

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS
TULEY & SAVARESE, P.C.
By: */s/ M. Andrew Donaldson*
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

GREENSPOON MARDER LLP
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub
(*pro hac vice* application forthcoming)
Jacob Mars
(*pro hac vice* application forthcoming)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-213-0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
jacob.mars@gmlaw.com
rene.vazquez@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant Freedom Life Insurance Company of America*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 2, 2026, a true and correct copy of the foregoing was served via e-mail and U.S. first class mail upon the following:

Robin Black
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324
rblackal@gmail.com

*Plaintiff Pro Se*

*/s/ M. Andrew Donaldson*
M. ANDREW DONALDSON

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

C.A. No. 1:22-cv-00249

ANTHONY DAHL and TEDDI DAHL,

Plaintiffs,

v.

USHEALTH ADVISORS, L.L.C.,
USHEALTH GROUP, INC.,
FREEDOM LIFE INSURANCE COMPANY OF AMERICA, and
JESUS BURGA,

Defendants.

---

**CORPORATE DISCLOSURE STATEMENT**

---

Pursuant to Fed. R. Civ. P. 7.1, Defendants USHEALTH Advisor, L.L.C., USHEALTH Group, Inc., and Freedom Life Insurance Company of American are wholly-owned indirect subsidiaries of UnitedHealth Group Incorporated, which is publicly traded.

Respectfully submitted,

By: */s/ Lance V. Clack*
Andrew G. Jubinsky
Texas State Bar No. 11043000
andy.jubinsky@figdav.com
Lance V. Clack
Texas State Bar No. 24040694
lance.clack@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000
(214) 939-2090 (Fax)

and

Adam J. Sinton
asinton@ssmklaw.com
**SINTON, SCOTT, MINOCK & KEREW**
1525 Raleigh St., Suite 503
Denver, CO 80204
(720) 738-9894
(866) 936-1973 (fax)

ATTORNEYS FOR DEFENDANTS
USHEALTH ADVISORS, L.L.C.;
USHEALTH GROUP, INC.; FREEDOM LIFE
INSURANCE COMPANY OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system, and all others will be notified via certified mail, return receipt requested, on January 28, 2022.

*/s/ Lance V. Clack*
Lance V. Clack

# EXHIBIT J

## Notice of Related Action

After the Vega lawsuit was removed to federal court, Defendants filed a Notice of Related Action informing the Court that the Vega litigation is related to this case, Plaintiff's pending lawsuit against USHEALTH Advisors, LLC and USHEALTH Group, Inc. arising from alleged TCPA and Alabama Telemarketing Act violations.

FILED
2026 Aug-04 PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

ROBIN BLACK,

Plaintiff,

v.

JONATHAN JOSEPH VEGA and FREEDOM LIFE INSURANCE COMPANY OF AMERICA,

Defendants.

CASE NO.: 1:26-cv-01149-GMB

## NOTICE OF A RELATED ACTION

I certify that the instant action:

__X__ IS related to pending or closed civil or criminal case(s) previously filed in this Court, or any other Federal or State court, or administrative agency as indicated below.

This action is related to the lawsuit filed by Plaintiff on August 19, 2025 and is allegedly based upon violations of the Telephone Consumer Protection Act ("TCPA") and the Alabama Telemarketing Act ("ATA"). The related lawsuit is *Black v. USHEALTH ADVISORS, LLC, and USHEALTH GROUP, INC.*, No. 1:25-cv-01365-CLM.

______ IS NOT related to any pending or closed civil or criminal case filed in this Court, or any other Federal or State court, or administrative agency.

I further certify that I will serve a copy of this NOTICE OF A RELATED ACTION upon each party no later than fourteen days after appearance of the party.

Dated: August 4, 2026

Respectfully submitted,

HOLTSFORD GILLILAND HITSON
HOWARD STEVENS
TULEY & SAVARESE, P.C.
By: */s/ M. Andrew Donaldson*
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

GREENSPOON MARDER LLP
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub
(*pro hac vice* application forthcoming)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-213-0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
jacob.mars@gmlaw.com
rene.vazquez@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant Freedom Life Insurance Company of America*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on August 4, 2026, the foregoing was electronically filed via CM/ECF, which will send notice of filing and a service copy to all counsel of record by the Court's electronic filing system. A copy of the foregoing document is being sent to *Plaintiff Pro Se* via e-mail at rblackal@gmail.com.

*/s/ M. Andrew Donaldson*
M. Andrew Donaldson

## Summary of Continuing Communications

The evidence submitted demonstrates:

- Plaintiff repeatedly requested identifying information before agreeing to speak with an insurance agent.
- Plaintiff participated in a recorded conversation with Jonathan Joseph Vega after verifying his identity.
- Mr. Vega was actively appointed with Freedom Life Insurance Company of America at the time of the communications.
- Corporate disclosure statements filed by Defendants identify the corporate relationships among Freedom Life, USHEALTH Group, USHEALTH Advisors, and UnitedHealth Group.
- Defendants subsequently informed this Court that the Vega litigation is related to Plaintiff's pending USHEALTH litigation.

Plaintiff submits these materials in good faith to provide a complete response to Request for Production No. 8 and to demonstrate that the Vega lawsuit arose from continuing insurance marketing communications following prior litigation and repeated requests that such communications cease.

FILED
2026 Nov-23 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT K

FILED
2026 Aug-17 PM 06:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ROBIN BLACK,

Plaintiff,

v.

JONATHAN JOSEPH VEGA and
FREEDOM LIFE INSURANCE
COMPANY OF AMERICA,

Defendants.
___________________________________/

CASE NO.: 1:26-cv-01149-GMB

**Oral Argument Requested**

**Plaintiff's Position Unknown**

**DEFENDANT FREEDOM LIFE INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS PLAINTIFF ROBIN BLACK'S AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), Defendant Freedom Life Insurance Company of America (“FLICA”) moves this Court to dismiss Plaintiff Robin Black’s Amended Complaint, Dkt. No. 1-1 (the “Amended Complaint”).

**ARGUMENT**

**I. THE COMPLAINT IS DUE TO BE DISMISSED UNDER RULE 12(B)(5) FOR INSUFFICIENT SERVICE OF PROCESS**

“Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.” *Pardazi v. Cullman Med. Ctr*., 896 F.2d 1313, 1317 (11th Cir. 1990). Dismissal for insufficient service of process is expressly authorized by Federal Rule of Civil Procedure 12(b)(5), and Plaintiff bears the burden of proof. *See, e.g., Thorpe v. Dumas*, 788 F. App’x 644, 647 (11th Cir. 2019).

**A. Plaintiff’s Service by First Class Mail was Invalid**

“A federal court may consider the sufficiency of process after removal and does so by looking to the state law governing process.” *Usatorres v. Marina Mercante Nicaraguenses , S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985). Alabama law requires “strict compliance with the rules regarding service of process . . . .” *Ex parte Jenkins,* 318 So. 3d 515, 519 (Ala. 2020).

Plaintiff certified that she “served a copy of the [Amended Complaint]” upon FLICA “via the United States Postal Service, first class postage prepaid.” Am. Compl. at 8. Alabama law, however, permits service by first class mail *only* if

service by certified mail, return receipt requested was attempted and refused and, even then, the mailing must be done by the court clerk. *See* Ala. R. Civ. P. 4(e). *See Origin Bank v. Cope*, No. CV 25-0350-WS-B, 2026 WL 474002, *1-2 (S.D. Ala. Feb. 19, 2026) (dismissing complaint). There is no evidence that Plaintiff ever even attempted to serve FLICA by certified mail or that it was refused, and Plaintiff's attempted service only by first class mail is invalid.

### B. No Summons was Issued or Served on FLICA

In addition to attempting to serve FLICA through an impermissible method, Plaintiff wholly failed to serve perhaps the most important paper for effectuating service, ***the summons***, in part because one was never issued. Both Federal Rule of Civil Procedure 4(c)(1) and Alabama Rule of Civil Procedure 4(i)(2)(C) require service of the summons for service to be effective. *See also Pierce v. Kyle*, 445 Fed. Appx. 201, 202 (11th Cir. 2011); *Dennis v. Still Waters Residential Ass'n, Inc.*, 18 So.3d 959, 961 (Ala. Civ. App. 2009). The envelope that Plaintiff mailed to FLICA contained (1) the circuit court's order granting Plaintiff's Motion to Amend Complaint, (2) Plaintiff's summary of her claims, and (3) the Amended Complaint. *See* Exs. A & B. There was simply no summons included in the mailing. This is because there was no summons to include. The circuit court docket reveals that Plaintiff never requested a summons for FLICA, and therefore one was never issued. *See* Dkt. No. 1-2. Without a summons for FLICA ever being issued, it obviously

could not have been served and service on FLICA could not have been valid.

## II. THE COMPLAINT IS DUE TO BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### A. All Claims against FLICA Should be Dismissed for Failure to Plausibly Allege an Agency Relationship

Plaintiff squarely alleges that Defendant Vega placed the telephone calls and text messages to her, and asserts FLICA is vicariously liable solely "[t]o the extent discovery confirms actual authority, apparent authority, ratification, agency, or benefit . . . ." Am. Compl. at ¶ 30. She copies the same conclusory sentence in each

count. *See id.* at ¶¶ 35, 41, 48-49. Plaintiff, though, does not allege a plausible basis to find vicarious liability, requiring dismissal of all claims against FLICA.

The law is clear that simply reciting the word "agent" is not enough to plausibly allege a principal-agent relationship, which is distinct from an "insurance agent." *See, e.g., Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No. 6:22-CV-1605-WWB-EJK, 2023 WL 10947151, *3 (M.D. Fla. July 12, 2023) ("[C]onclusory allegations of agency without any supporting facts are not enough to properly allege agency or the existence of an agreement between Cigna and the third parties that contracted with Plaintiff.").[1] Plaintiff does not allege well-pleaded facts sufficient to permit a plausible inference of an agency relationship under any of the three common law principles (formal agency, apparent authority, and ratification). *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019); *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014).

On a motion to dismiss, the Court must determine whether there is "a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592, *3 (S.D. Fla. May 11, 2017).

[1] *See also, e.g., Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (finding plaintiff failed to plausibly alleged telemarketers allegedly calling on behalf of State Farm were in a principal-agent relationship); *Abante Rooter & Plumbing v. Farmers Group, Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *5 (N.D. Cal. Jan. 4, 2018) (similar).

Therefore, Plaintiff must allege enough facts to show that FLICA exercised substantial control over the supposed third-party telemarketer agents' actions, ratified the agents' conduct, or represented that the agents acted with authority from FLICA. *See Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014). Plaintiff's conclusory, fact-free assertion of vicarious liability "to the extent discovery confirms" a basis for such liability is a plainly insufficient threadbare recital. *See, e.g.*, *Jessop v. Penn Nat'l Gaming, Inc.*, No. 6:18-CV-1741-ORL-37DCI, 2019 WL 5549143, *4-5 (M.D. Fla. Oct. 28, 2019) (granting motion to dismiss because "Plaintiff needs more than conclusory statements that a party is an 'agent,'" and "[n]othing in the Complaint . . . indicates that Penn National controls the internal affairs of Everi, controls how Everi operates on a daily basis, or offers more than vague, conclusory allegations of control and agency").

**B. The Claims against FLICA are Improper Claim-Splitting**

Plaintiff's claims against FLICA are also due to be dismissed because, in filing claims regarding the same types of telephone calls at issue in *Black v. USHEALTH Advisors, LLC*, No. 1:25-cv-01365-CLM (N.D. Ala.) ("*Black I*"), Plaintiff has engaged in claim-splitting. The rule against claim-splitting "flows from the doctrine of *res judicata*" and "makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." *Pollitz v. Halifax Health*, No. 6:15-CV-450-ORL-37, 2015 WL 4987732, *2 (M.D. Fla. Aug. 19,

2015) (citation omitted). "It is well settled that a plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010)). The claim-splitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" *Id.* (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)). Courts apply a two-factor test when analyzing potential claim-splitting: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841-42 (quoting *Khan v. H & R Block E. Enters., Inc.*, No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)). Both are established here.

### 1. *Black I* and this Case Involve the Same Parties and Privies

While FLICA is not a party to *Black I*, it is in privity with the defendants in that case – USHEALTH Group, Inc. ("USHG") and USHEALTH Advisors, LLC ("USHA") – for purposes of this analysis. "'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004). Among the types of relationships that qualify for

privity is when one entity is a subsidiary of another or two entities are sister companies, *i.e.*, companies that are ultimately owned by a common parent.[2]

FLICA is a subsidiary of USHG, and thus is a sister company of USHA, which is also a subsidiary of USHG. The corporate disclosure statements filed with this Court in Plaintiff's two cases establish that fact. *See* Dkt. No. 2; Ex. C. Privity therefore exists between FLICA and USHG and USHA for purposes of claim-splitting/res judicata. *See, e.g.*, *Jorgensen v. Sony/ATV Music Pub.*, No. 12 CIV. 1662 BMC RLM, 2012 WL 1801983, *2 (E.D.N.Y. May 10, 2012) (finding claims were barred because corporate affiliates were "all in privity for purposes of *res judicata*").

**2. *Black I* and this Case Arise from the Same Series of Transactions**

"Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842. Both *Black I* and this lawsuit are based upon alleged telephone solicitations made to Plaintiff by or on behalf of the various defendants to solicit the purchase of health insurance coverage. *See, e.g.*, Am. Compl. at ¶¶ 28-

[2] *See, e.g.*, *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) (finding parent and subsidiary companies to be in privity); *Pignato v. PHH Mortg. Corp.*, No. 2:19-CV-00261-SCJ-JCF, 2020 WL 7382307, *3 n.3 (N.D. Ga. Apr. 17, 2020) (sister companies); *Luster v. Premier Bankcard, LLC*, No. 1:15-CV-0154-LMM, 2016 WL 7826668, *4 (N.D. Ga. June 7, 2016) (sister companies); *Everhart v. Citibank, NA.*, No. CV H-13-2752, 2015 WL 12805172, *3 (S.D. Tex. Mar. 30, 2015) (parent and subsidiary); *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 649–50 (S.D. Tex. 2012) (sister companies), *aff'd*, 527 F. App'x 278 (5th Cir. 2013).

30; Ex. D at ¶¶ 13-14. In verified interrogatory responses recently served in *Black I*, Plaintiff confirmed the overlap between the two cases when she identified 44 telephone calls at issue and added, "Later, with the case [*Black I*] ongoing, I continued to receive calls, and I have filed a separate case in Dekalb County, Abama; about those ongoing calls from an agent not named as a defendant in this case." Ex. E at Interrogatory Response No. 2. And when asked for a computation of her damages in *Black I*, Plaintiff stated "I will supplement shortly with the ongoing calls since the complaint was filed," that is, the calls identified in this lawsuit. *Id.* at Interrogatory Response No. 4.[3]

This situation is no different from what the Eleventh Circuit addressed in *Vanover*, also a TCPA case. The Eleventh Circuit rejected any differences in two sets of claims based on the alleged calls in the second lawsuit beginning "earlier than the date alleged" in the first lawsuit or involving calls made to the plaintiff's residential telephone, when her first lawsuit involved calls only to her cellular telephone. *Vanover*, 857 F.3d at 842. As in *Vanover*, these minor differences in the alleged efforts by three affiliated companies in both lawsuits to sell health insurance to Plaintiff do not change that the claims "arise from the same transaction or series of transactions," "the factual bases for both lawsuits are related in time, origin, and

[3] Plaintiff responded to the interrogatories without reciting the interrogatories. To facilitate the Court's review of the responses, FLICA attaches the interrogatories as well. *See* Ex. F.

motivation, and they form a convenient trial unit, thereby precluding [Plaintiff] from splitting [her] claims among the lawsuits." *Id.*

### C. All Claims Should be Dismissed Because Plaintiff Fails to Allege She is a Residential Telephone Subscriber

Even if Plaintiff had plausibly alleged vicarious liability against FLICA, and her claims were not barred by the rule against claim-splitting, she still fails to state a plausible claim for relief because the provisions of the Alabama Telemarketing Act (the "ATA") and TCPA under which she is suing apply only to calls to residential subscribers. *See* 47 U.S.C. § 227(c) (limited to "residential telephone subscribers"); Ala. Code § 8-19C-2 (limited to a "residential subscriber"); Ala. Code § 8-19C-5 (limited to a "residential subscriber"). Neither statute defines the terms "residential telephone subscriber" or "residential subscriber." The Eleventh Circuit, however, has distinguished between a "residential telephone line" and a cellular telephone number, for example. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014). Regardless, by limiting these provisions to certain types of users – residential subscribers – Congress and the Alabama Legislature intended to exclude other types of telephone subscriptions, such as cellular and business telephone numbers.

"To invoke a statutory cause of action," "a plaintiff must belong to the class of persons to whom the statute grants a right to sue." *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 606 U.S. 226, 232 (2025). Thus, to be able to state a plausible

claim for relief for alleged violations of these statutory provisions, Plaintiff must allege she is a residential telephone subscriber. The Amended Complaint is devoid of any such allegation. Where this issue has been raised, the courts have found allegations that the plaintiff "uses his phone as his personal residential number and has not used it for business or commercial purposes" will suffice to plausibly allege residential subscriber status. *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1319 (N.D. Ga. 2024). *See also Buxton v. Full Sail, LLC*, No. 6:24-CV-747-JSS-DCI, 2024 WL 5057222, *3 (M.D. Fla. Dec. 10, 2024) (denying motion to dismiss where plaintiff alleged "she uses her cell phone number for residential, not business, purposes and does not have another personal number"). Conversely, the absence of such allegations requires dismissal:

> [T]he Court agrees with Defendant that the Complaint's allegations are insufficient to plead the existence of a "residential telephone subscriber" within the meaning of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). If Plaintiff has a claim against Defendant for violating section 227(c)(5), then Plaintiff must specify the basic nature of the "residential telephone subscriber" at issue, using clear and direct allegations regarding the residential telephone number implicated and any relevant do-not-call-registry information associated with that specific phone number.

*Lawson v. Nations Health Grp., Inc.*, No. 23-80893-CIV, 2024 WL 5103503, *3 (S.D. Fla. Aug. 8, 2024).

Here, Plaintiff does not specify the basic nature of the purported residential telephone subscriber at issue, nor does she allege she uses the telephone number at

issue as her residential number, not for business or commercial use, and that she has no other personal telephone number. In the absence of those allegations, as in *Lawson*, Plaintiff has failed to sufficiently allege that she is a residential telephone subscriber for purposes of the telephone calls at issue.

**D. Counts I and II Should be Dismissed Because FLICA is Exempt**

Counts I and II are brought under the ATA. The ATA, however, expressly exempts "[a]ny licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license." Ala. Code § 8-19A-4(9). Plaintiff has alleged the telephone calls and text messages at issue were placed by co-Defendant Vega, that Vega "is a licensed insurance agent," and that she believes FLICA is vicariously liable because Vega allegedly was acting as FLICA's "appointed insurance agent . . . in connection with the marketing and solicitation of health insurance products." Am. Compl. at ¶¶ 2 & 23. These allegations squarely establish the exemption under § 8-19A-4(9) as a matter of law. *Accord Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

Significantly, this exemption also precludes any liability under Plaintiff's claims asserted under Ala. Code §§ 8-19C-2 and 8-19C-5, because those provisions apply only to "telephone solicitations." For purposes of Ala. Code § 8-19C, a "telephone solicitation" "does not include communications by or on behalf of any of the exempt persons in Section 8-19A-4." Ala. Code § 8-19A-3(17). The statutory

exemption therefore means, by definition, there are no actionable telephone solicitation in this case for purposes of the ATA.[4]

**E. All Claims Based on Text Messages Must be Dismissed**

Finally, to the extent they survive all the other challenges, all counts of the Amended Complaint based on the receipt of text messages must be dismissed.

Addressing the TCPA claim first, Count III attempts to assert a claim under 47 U.S.C. § 227(c)(5), but that that provision creates a private right of action that is unambiguously limited only to telephone calls, not to text messages. When "interpreting a statute, [courts] start with the plain language of the provision to be interpreted." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008). With respect to 47 U.S.C. § 227(c)(5), the plain language is dispositive that the statute does not apply to text messages, as many courts, including the Seventh Circuit and the vast majority of courts in the Eleventh Circuit to have considered the issue, have recognized.[5]

---

[4] Ala. Code § 8-19A-3 expressly provides that the definitions contained therein apply to the defined terms "[a]s used in this chapter [Chapter 19A] ***and Chapter 19C*** . . . ." (emphasis added).

[5] *See, e.g.*, *Steidinger v. Blackstone Med. Servs.*, No. 25-2398, 2026 WL 2028517, *1 (7th Cir. July 14, 2026) ("Based on the ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227, we find that texts are not calls, so § 227(c)(5) does not authorize the plaintiffs' suit."); *Internicola v. MortgagePros, LLC*, No. 6:25-CV-01613-AGM-LHP, 2026 WL 2160936, *2 (M.D. Fla. June 10, 2026) (collecting cases); *Sayed v. Naturopathica Holistic Health, Inc.*, 25-cv-00847-SDM-CPT, ECF 27 (M.D. Fla. Oct. 24, 2025) ("I agree . . . that 'the statutory text here is clear, and a text message is not a 'telephone call.''"); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, *5 (N.D. Ga. Apr. 20, 2026) ("Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because Section 227(c)(5)'s private right of action is limited to 'telephone call[s],' a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in 47 C.F.R.

Section 227(c)(5) created a private right of action only to persons who "received more than one telephone call" in violation of the do-not-call rules. 47 U.S.C. § 227(c)(5). The Supreme Court recently reiterated that a "statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Thus, to properly interpret the term "telephone call" in § 227(c), recognizing that no ordinary person at the time that the TCPA was drafted and enacted in 1991 would have even known what a text message is, let alone have understood it to be synonymous with a telephone call, is critical and dispositive. *See, e.g., James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1370 (M.D. Fla. 2026) ("The ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message.").[6]

It is noteworthy that since it enacted the TCPA, Congress amended the statute on multiple occasions to expressly add "text message" or "text messages" to ensure that the scope of various of the statute's restrictions was broad enough to explicitly

---

§ 64.1200(e)."); *James v. Smarter Contact, Inc.*, No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) (granting motion to dismiss on same basis and finding amendment would be futile); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, *3–5 (N.D. Ga. Feb. 17, 2026) (granting motion to dismiss on same basis); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LMM, 2026 WL 810929, *2–3 (N.D. Ga. Feb. 12, 2026) (granting motion for judgment on the pleadings on same basis); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272–76 (N.D. Fla. 2025) (granting motion to dismiss on same basis); *see also Lopresti v. Nouveau Essentials Marketing, LLC*, No. 5:25-cv-00282-CEM-PRL, 2026 WL 964758, *4-6 (M.D. Fla. Feb. 26, 2026) (recommending granting motion for judgment on the pleadings on same basis).

[6] Even today, no ordinary person today would understand the term "telephone call" to mean "text message." *See, e.g.*, *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("Certainly, no ordinary person would think of a text message as a '*telephone* call.'").

cover both a "call" and a "text message," establishing the two concepts are separate. *See* Pub. L. 115-141, 132 Stat. 348 § 503 (Mar. 23, 2018) (amending 47 U.S.C. § 227(e)); Pub. L. 116-105, 133 Stat. 3274 § 10 (Dec. 30, 2019) (amending 47 U.S.C. §§ 227(i) and (j)). Together, the language in these TCPA provisions demonstrate Congress's understanding that a call and a text message are not one and the same.

While Congress has amended certain provisions of the TCPA to include text messages within its scope, it has not so amended § 227(c)(5). "When Congress uses different terms, [courts] expect that [those terms] hold different meanings." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025). In the TCPA, one portion of the statute uses the term(s) "call or text message" while another merely uses the term "telephone call." The only permissible conclusion to reach from this difference is that the latter term is intentionally narrower than the former. Simply stated, "telephone call" as used in § 227(c)(5) does not include text messages.

To the extent Plaintiff may rely upon a broader interpretation of "call" by the Federal Communications Commission ("FCC"), that is of no moment in deciding the plain meaning of the statutory text. There is no question now that it "remains the responsibility of the court to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392 (quotation omitted). The courts are not bound by the FCC's interpretation, but rather "interpret the statute as courts traditionally

do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). Even when providing "'appropriate respect' to an agency's view," a court cannot "adopt[ ] a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Davis*, 797 F. Supp. 3d at 1275. Because the private right of action under 47 U.S.C. § 227(c)(5) is limited to telephone calls, and does not apply to text messages, Count III must be dismissed as pleaded to the extent it is based on receipt of allegedly violative text messages.

The same is true with Counts I and II, which attempt to assert claims under Ala. Code §§ 8-19A-12, 8-19C-2, and 8-19C-5. Section 8-19A-12 applies to a "telephone call" and Sections 8-19C-2 and 8-19C-5 apply to a "telephone solicitation," the latter of which is defined, in relevant part, as "[a] voice communication over a telephone line." Ala. Code § 8-19A-3(17). Thus, neither term extends to a text message. *See Underwood v. IFA Holdings, LLC*, No. 1:21-CV-00830-ACA, 2022 WL 2307738, *6 (N.D. Ala. June 27, 2022) (dismissing ATA claim based only upon receipt of text messages).

## CONCLUSION

For the foregoing reasons, Defendant Freedom Life Insurance Company of America respectfully requests that the Court enter an order dismissing the claims against FLICA and for any other relief the Court deems just and appropriate.

Dated: August 17, 2026

Respectfully submitted,

GREENSPOON MARDER LLP
By: <u>*/s/ Roy Taub*</u>
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub (*pro hac vice*)
Jacob Mars
(*pro hac vice* application forthcoming)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-213-0140
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
jacob.mars@gmlaw.com
rene.vazquez@gmlaw.com
cheryl.cochran@gmlaw.com

HOLTSFORD GILLILAND HITSON HOWARD STEVENS TULEY & SAVARESE, P.C.
M. Andrew Donaldson (DON024)
P.O. Box 4128
Montgomery, AL 36103-4128
Phone: (334)215-8585
Fax: (334)215-7101
adonaldson@hglawpc.com

*Attorneys for Defendant Freedom Life Insurance Company of America*

**<u>CERTIFICATE OF COMPLIANCE</u>**

Counsel for Freedom Life Insurance Company of America attempted to confer with Plaintiff *Pro Se* by e-mail on August 14, 2026 at 7:00 p.m. ET regarding the requested relief. Plaintiff has not responded as of the filing of this Motion. Therefore, Defendant has no knowledge as to Plaintiff's position regarding this Motion.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 17, 2026, a true and correct copy of the foregoing was served via e-mail and U.S. first class mail upon the following:

Robin Black
1812 Alabama Avenue, NW
Fort Payne, AL 35967
(615) 519-8324
rblackal@gmail.com

*Plaintiff Pro Se*

*<u>/s/ Roy Taub</u>*
ROY TAUB